## S. DAUENHAUER v. G. P. DEVINE.

1. JURISDICTION—INJUNCTION.—In a suit by injunction and for general relief by the half owner of a partition wall between building lots in a city against the other half owner, each party owning one of the contiguous lots, to enjoin the placing of windows in a third story about to be built on said wall by defendant, alleging that the windows would result in irreparable damage, exposing plaintiff's building to fire, giving access to unauthorized persons on his roof, and resulting in consequent depreciation of the value of plaintiff's property : *Held*—

    1. That it was not necessary to charge a measure of the damage anticipated to give the court jurisdiction.

    2. The title and possession of land were so far involved by the character of the action as to give the court jurisdiction.

2. DIVIDING WALLS.—When a dividing wall is constructed by parties owning adjoining lots, by agreement "to rest equally on the land of each, to be equally used by each for all the purposes of an exterior wall," each party has (1) an easement in the half of the wall on his neighbor's lot which entitles each to the use of the whole as a party-wall ; (2) the right to afterwards raise the wall, if it be of sufficient strength and can be raised without interfering with or injuriously affecting the rights of the other part owner. It follows, that after the construction of a two-story wall under such an agreement, a new agreement providing for the right of one of the parties to erect a third story on the party-wall, it being of sufficient strength to support it, was without consideration.

3. PARTY-WALLS.—If, however, the original agreement under which a party-wall is built, resting equally on the ground of each adjacent proprietor, provides for a wall without windows, no right exists in either party to erect another story with window openings on that part of the wall belonging to his neighbor.

4. DECREE—INJUNCTION.—After an injunction prohibiting the part owner of a dividing wall from using openings or windows in the wall of a third story he was constructing, and providing that the

same should be a dead wall if built, the fiat was violated by the insertion of windows. On final trial, judgment being for plaintiff, it was decreed that "the wall shall be and remain a dead wall, without windows or openings of any kind; that the said [defendant] shall wall up with masonry the windows placed in the third story of his said [wall] during the pendency of this suit; and in default of his so doing in thirty days, the sheriff of [the county] shall cause said windows to be walled up and collect the cost of said [defendant] as under execution": *Held*, That the above portion of the decree was proper.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

The opinion recites the facts.

*J. H. McLeary*, for appellant.

I. The court erred in overruling defendant's plea to the jurisdiction, as is shown by bill of exceptions. (Const., art. 5, secs. 8, 16; Laws of 15th Leg., secs. 3, 5, pp. 18, 19; Paschal's Dig., art. 1405.)

II. The court erred in disregarding the plea of the defendant, that the instrument dated 7th of June, 1877, was without consideration and void.

The court will observe that the consideration set out in the instrument is no consideration at all. The instrument begins: "In consideration of G. P. Devine allowing me to put the dead third-story south wall of the building I am erecting on the corner of Main plaza and Commerce street on the north wall of the 'dollar store,'" &c. This privilege the defendant already had under the first agreement. On examination of both instruments, it is believed it will appear that the appellant Dauenhauer gains nothing in the way of privilege, benefit, or emolument by the second instrument over and above what he had secured by the first. Devine expressly states, in his testimony, that "the only consideration to Dauenhauer for making or signing the instrument dated 7th of June, was the privilege of building a three-story wall instead of a two-story wall, as at first contemplated."

Now, in the first instrument there is nothing said about the height or number of stories to which the wall was to be built. Then, the pleadings and the evidence both show the instrument to be without consideration and void. (Pars. on Cont., 427, *et seq.*, 437, and note *j*.)

III. The court erred in ordering in the decree "that the instrument signed by the said Dauenhauer, dated 7th of June, 1877, is a valid and subsisting agreement between the said plaintiff and the said defendant, which said agreement is set out in the pleadings herein and is as follows, to wit," (setting out the instrument at length,) the plaintiff not having prayed for this in his petition, and the evidence not warranting the said paragraph in the decree even had the same been asked for in the pleadings, which it was not, thus giving the plaintiff not only more than the evidence warranted, but even more than he prayed for in his petition. (Paschal's Dig., arts. 1427–1476; McKey *v.* Welch, 22 Tex., 396, 397; Pinchain *v.* Collard, 13 Tex., 335; Brown *v.* Horless, 22 Tex., 647; Hogan *v.* Kellum, 13 Tex., 399, 400; Paschal's Dig., note 539, and authorities therein cited.)

IV. The decree of the court is erroneous in fixing the time within which Dauenhauer, the defendant, is to close up the windows at thirty days, there being nothing in the law to warrant this particular limit.

When it is considered by the court that the appellant complied with the terms both of the first and second instruments, by giving his foot of ground and paying for his share of the wall, as stipulated in the first agreement, and by closing up the second-story window, as required by the second agreement, (so called,) it seems quite unreasonable to require him to close up his windows, at a cost of several hundred dollars, merely on account of the incidental expression used in the document, which it is clear, from the evidence, the appellant did not understand. The plaintiff's whole case, resting on the incidental use of an obscure technical term, seems to us to have rather a shadowy foundation.

*Wælder & Upson,* for appellee.

I. The District Court has power to issue the writ of injunction, and it is the only court which has this power in a case like this, in which the title to and enjoyment of the real property of the complainant is involved.

One-half of the land upon which the party-wall stands is owned by the plaintiff. (Const., art. 5, sec. 8; Wash. on Ease., 547.)

The title to one-half of the ground upon which the party-wall stands being in Devine in severalty, any real or supposed trespass upon his land is cognizable in the District Court, and in that court alone.

II. The judgment of the court may be so framed "as to afford all the relief which may be required by the nature of the case, and which is granted by courts of law or equity."

Under prayer for general relief, the plaintiff is entitled to such a final judgment on the merits as the law and the facts authorize. (Paschal's Dig., art. 1410; Hardy *v.* De Leon, 5 Tex., 236; Hipp *v.* Huchett, 4 Tex., 23; Trammell *v.* Watson, 25 Tex. Supp., 216.)

III. Every order or decree requiring a person to do an act, is to state the time within which the act is to be done.

The decree provides that the windows in the third-story wall shall be walled up within thirty days. (2 Dan. Chan. Plead., 1005.)

IV. The specific directions of a decree must depend upon the nature of the particular case which is the subject of the decree. (2 Dan. Chan. Plead., 1004, and note 8.)

V. If the party commanded to do the act fails to do the act within the time fixed by the decree, the court may cause its order to be executed. (2 Dan. Chan. Plead., 1042, *et seq.*) Under our system, the proper person by whom the court would cause its order to be executed is the sheriff.

VI. The party-wall is devoted to the purpose of being used for the common benefit of both adjoining owners. (Brooks

*v.* Curtis, 50 N. Y., 639.)   A wall with windows in it could not be so used.

In the absence of the agreement of June 7, 1877, the rights of both parties being fixed and limited by the agreement of May 8, 1876, the easement in the wall could not be enlarged, extended, or burdened with a use not contemplated by the agreement last named.   (Kirkham *v.* Sharp, 1 Whart., 323; Seibert *v.* Levan, 8 Barr., 383.)   The placing of windows in a wall which was intended to be a party-wall between the two adjoining buildings, (necessarily a solid wall,) would be an enlargement and extension of the easement.

An attempt to extend an easement will be enjoined. (Carty *v.* Shields, Sup. Ct. of Penn., 1878.)

VII. Under a statute regulating—or under an agreement, as in this case, providing for—the erection of a party-wall, such party-wall cannot be subjected to a servitude foreign to its uses as a wall in common, nor can its capacity as such be injured by making openings therein.   (Greenwald *v.* Kappes, 31 Ind., 216; Sullivan *v.* Graffort, 35 Iowa, 531; Marion *v.* Johnson, 23 La. Ann., 597; Milne's Appeal, 81 Penn. St., 54; Wood on Nuis., sec. 232.)

VIII. When a wall is built half upon the land of each land owner, either party has a right to carry up his half of the wall above that of the half of the other proprietor, if he sees fit.   (Wash. on Ease., 538, referring to Matts *v.* Hawkins, 5 Taunt., 20.)   But he could not carry up the half of the adjoining proprietor, without the latter's consent.   There being an agreement in this case providing for carrying up the entire wall as a solid or "dead" wall, such agreement is binding upon both parties.

IX. Where there is a party-wall between two adjoining estates, neither party has a right to demolish or rebuild it at his pleasure, because he is not the sole owner or master of the structure. (Wash. on Ease., 551.)   Upon the same principle, the appellant in this case would not have the right so to construct his additional or raised wall as to make it beneficial to

him alone, or to change its character from a solid wall to one with openings in it.

GOULD, ASSOCIATE JUSTICE.—Devine and Dauenhauer, being proprietors of adjoining lots fronting on the Main plaza of the city of San Antonio, entered into an agreement that Devine was "to put up party-walls (whenever he is prepared to build on his lots on Main plaza) with" Dauenhauer, who agreed to give Devine "one foot of ground, for the purpose of erecting said party-walls, off of his property on the Main plaza," and "to pay one-half of the cost of said party-walls." In case Dauenhauer "should wish to have plates placed in said party-walls for the convenience of laying joists," he agreed to pay Devine the cost of said plates.

Under this agreement Devine erected a two-story building, known as the "dollar store," on his lot, the cost of the party-wall—two feet thick at the bottom and eighteen inches at the top, located so as to occupy one foot on each lot—being paid one-half by each. In this party-wall was one window, placed there by Dauenhauer with Devine's consent. At this time Dauenhauer had a one-story building on his lot. Subsequently, Dauenhauer, being engaged in erecting a three-story building on his lot and being about to raise the party-wall to three stories, was approached by Devine, and at his request signed the following instrument: "In consideration of G. P. Devine allowing me to put the dead third-story south wall of the building I am erecting on the corner of Main plaza and Commerce street on the south wall of the 'dollar store,' I obligate myself to allow said Devine to build (should he hereafter wish to do so, in putting another story on his buildings on Main plaza) on that part of the west line of the store occupied by D. and A. Oppenheimer fronting on Commerce street, as also on the end of said store; and I obligate myself to close up the window in the north wall of said 'dollar store' with solid masonry at the time of putting up my third-story

wall." This instrument is dated June 7, 1877, witnessed by A. Siebel, and signed by S. Dauenhauer.

This suit was instituted by Devine July 14, 1877, alleging that Dauenhauer, in violation of these agreements and of the rights of petitioner as owner of one-half of the land on which the wall rested, was about to place windows in said third-story wall, instead of making it a dead wall, and alleging that these windows would be of irreparable damage to petitioner, exposing his adjoining building to fire; giving access to the roof thereof to unauthorized persons; depreciating the value of his property by reason of the dangers to which it would thus be exposed; also preventing him from erecting a third story and using the party-wall as intended, praying for injunction and general relief.

The fiat of the judge was not such as to stop the construction of the wall with windows, but enjoined any use of the windows.

The defendant excepted to the jurisdiction of the court on the ground that no amount of damage was alleged, or other facts sufficient to give the court jurisdiction.

The answer of defendant alleged that the instrument of June 7, 1877, was signed by him in ignorance that the term "dead wall" meant a wall without windows, alleging his imperfect knowledge of the English language and other circumstances, and that he was overreached by plaintiff. The answer also charges that said instrument was void for want of consideration; denies any damage or increased danger of fire to plaintiff by reason of the windows; alleges that by reason of iron bars inserted in the windows the wall was substantially a dead wall in accordance with the spirit of the agreement, and that the windows were of great convenience to him and no damage to plaintiff.

There was conflicting evidence as to the circumstances under which Dauenhauer signed the paper of June 7. Several witnesses testified that the danger of fire from the windows would be greater to the three-story building of Dauen-

hauer than to the two-story building of Devine, though there would be some danger to the lower building from falling cinders. The architect testified that the party-wall was of sufficient strength to support the third story. The window in the second story referred to in the agreement was closed up. The only consideration for the agreement of June 7 was stated by Devine to be his assent to Dauenhauer building a three-story wall instead of a two-story wall, as, he says, was first contemplated. An architect testified that the term "dead wall" means a wall without openings, as technically used by architects and masons, but is not generally used in common language, and not generally understood by other than architects and masons. Another witness thought the expression a common one, meaning a wall without doors or windows.

The cause being submitted to the court, it was decreed "that the instrument signed by the said S. Dauenhauer, dated June 7, 1873, is a valid subsisting agreement between the said plaintiff and the said defendant," proceeding to set out the agreement in full. It was further decided that the injunction be perpetuated; "that the wall shall be and remain a dead wall, without windows or openings of any kind; that the said Dauenhauer shall wall up with masonry the windows placed in the third story of his said south wall during the pendency of this suit," and, in default of his doing so within thirty days, directing the sheriff to cause said windows to be walled up and collect the cost of Dauenhauer as under execution.

In regard to the question of the jurisdiction of the District Court, our opinion is, that the nature of the suit, the injury complained of, and the relief sought were such as to give the District Court jurisdiction, independent of the amount of injury alleged. The title and possession of land were so far involved as to make the case one for the District Court.

The objections to rulings of the court on the preliminary injunction and the admission of testimony, are believed to pre-

sent no questions requiring special notice. The issue of fraud in procuring the instrument of June 7 was one of fact, on which the evidence was conflicting, and on that point the finding of the court is conclusive.

The remaining questions may be stated as follows:

1. Was the instrument of June 7 a valid contract, or was it invalid because without consideration ?

2. Did Dauenhauer have the right to insert windows in the third story of the party-wall ?

3. If not, was the insertion of the windows a sufficient ground for injunction ?

4. Is the decree of the court in any respect erroneous ?

As we have no statute on the subject of party-walls, the rights of parties interested in such structures are to be regulated by the general principles of law and by the agreement, either express or implied, entered into.

The original agreement between Devine and Dauenhauer was for a party-wall, that is, a " dividing wall between their houses," resting equally on the land of each, and " to be used equally by each for all the purposes of an exterior wall." (Fettretch *v.* Leamy, 9 Bos., 530.) After the erection of the wall each party continued to own in severalty his own lot and building thereon up to the division line; but each had an easement in the other half of the wall which entitled each to the use of the whole wall as a party-wall. (Freeman on Co-tenancy and Partition, sec. 255; Matts *v.* Hawkins, 5 Taunt., (1 Eng. Com. Law,) 20; Partridge *v.* Gilbert, 15 N. Y., 601.)

By the terms of their agreement the height of the wall was not specified, and in the absence of any such agreement or understanding the authorities recognize the right of either party to raise the wall, if it be of sufficient strength and can be raised without interfering with or injuriously affecting the rights of the other party. (Matts *v.* Hawkins, 5 Taunt., 20; Cubitt *v.* Porter, 8 Barn. & Cress., 257; Brooks *v.* Curtis, 50 N. Y., 644; Wash. on Ease., p. 453, citing Code Napoleon,

art. 659; Wood on Nuisances, sec. 234; Eno v. Del Vecchio, 4 Duer, 53; Webster v. Stevens, 5 Duer, 553.)

Although at the time of their agreement the parties may have each contemplated erecting a two-story building, it would be unreasonable to imply that either intended to preclude himself from such an improvement as the addition of another story, or from the free use of his own property for that purpose. The more reasonable implication is, that the party-wall was intended to be raised with the buildings of either party, thus adding to rather than limiting the facilities for improvement by each.

The original agreement being silent on the subject, and the wall being of sufficient strength to admit of it without injury, Dauenhauer had the right to raise it to correspond to his three-story building without any further permission from Devine. It follows that the agreement of June 7 was without consideration, and was not binding on Dauenhauer as a contract.

But whilst Dauenhauer, in common with Devine, had the right thus to raise the dividing wall used by them in common, his right was to raise only such a wall as they had agreed on, and that was a wall without windows. The question is, what were his legal rights, not what was most convenient or profitable to him. His right to raise that part of the wall not on his own land could only grow out of the consent of the owner, and that consent was to a party-wall, a dividing wall between their houses, and obviously did not contemplate windows or doors. Ordinarily, division walls between houses of different proprietors would be walls without openings. In cities, one important consideration in building is danger of fire, and the construction of substantial dividing walls without openings is one of the safeguards against fire. In England, and in some of the cities of the United States, the regulations in regard to division walls are largely controlled with reference to fire. See Vollmer's Appeal, 61 Penn. St., 118, for a valuable history of the legislation in England and in Penn-

sylvania on that subject.   Under the legislation in Pennsyl-
vania, a party-wall in Philadelphia must be a solid wall of
brick or stone without openings, and the erection of a wall
with windows is held a case for the restraining power of
equity.   (Vollmer's Appeal, 61 Penn. St., 118; Sullivan v.
Graffort, 35 Iowa, 532.)  The Code Napoleon contains similar
provisions.    (Wash. on Ease., 555, citing Code Nap., arts.
660, 662.)

The extent of the injury to Devine in this case may not
have been great, but we have seen that such an injury has
been elsewhere regarded as calling for equitable interposi-
tion; and our opinion is, that the nature of the injury and
the relation of the parties to the party-wall made injunction
the proper remedy.

The decree of the court, however, must be reformed in so
far as it declares the validity of the agreement of June 7.
Not only was that agreement without consideration, but there
was no prayer authorizing such a decree.   The decree will
be reformed in this respect, but in all other matters will be
affirmed, the costs of appeal to be taxed against apppellee.

AFFIRMED.