## MRS. I. C. EVERLY v. J. W. DRISKILL.

Decided November 14, 1900.

**1. Party Wall—Windows—Injunction.**

A party wall, in the absence of an agreement to the contrary, necessarily means a solid wall; and the fact alone that the adjoining proprietor did not consent to the erection of it with windows is sufficient to entitle to injunction against so constructing it.

**2. Same—Irreparable Injury.**

Irreparable injury need not be shown in order to entitle such adjoining proprietor to relief by injunction; the invasion of his right to the protection afforded by a solid party wall is all that is necessary.

APPEAL from Mills. Tried below before Hon. JNO. M. FURMAN.

*Matthews & Browning* and *G. N. Harrison,* for appellant.

*L. J. Lewis, Leonard Doughty,* and *J. H. Tallichet,* for appellee.

FISHER, CHIEF JUSTICE.—This suit was instituted by appellant against appellee, in the District Court of Mills County, on the 3d day of May, A. D. 1898, to enjoin him from leaving openings for windows in the upper story of the south wall of the two-story stone building then being erected by appellee on the north half of lot No. 1 in block No. 16 of the town of Goldthwaite, Texas. The petition for injunction charged, among other things, that the appellant owned the south half of said lot No. 1 in said block No. 16, and that appellee owned the north half

of same; that the south wall of said two-story stone building was being built by appellee along and upon the dividing line separating said lot into said north and south halves, the one-half of same resting upon the land of appellant and the other half thereof resting upon the land of appellee; and that appellee was proceeding against appellant's will and over her protest to leave openings in the upper story of said south wall and put windows therein overlooking appellant's property.

The petition was presented to Hon. John M. Furman, judge of the Twenty-seventh Judicial District, on the 2d day of May, 1898, in chambers, and on the same day he indorsed his fiat thereon as follows, viz:

"State of Texas, County of Lampasas.—In Chambers, May 2, 1898. The clerk of the District Court of Mills County, State of Texas, will issue the writ of injunction prayed for in the foregoing petition, but with the following limitation and modification, to wit: Defendant J. W. Driskill may proceed to construct the wall mentioned in the plaintiff's petition, with openings therein for windows, subject, however, to be compelled to remove such windows and wall up such openings, so as to make a solid wall of said wall, should it appear upon the trial of this case that plaintiff is entitled to the relief prayed for; but the defendant is hereby enjoined from making any use of said windows detrimental to plaintiff's rights, as set forth in her said petition, until the further order of this court. Said writ of injunction to issue as above upon the plaintiff's executing and filing a good and sufficient bond in the sum of $200, payable to the adverse party and conditioned as the law requires.

"Witness my official signature, this 2d day of May, A. D. 1898.

"JNO. M. FURMAN,
"Dist. Judge 27th Dist."

Said petition for injunction with the fiat of the judge so indorsed thereon was filed in the District Court of Mills County on the 3d day of May, 1898, and on the same day appellant gave bond as therein required, and thereafter on the same day the injunction was issued and served upon appellee.

On the 17th day of March, 1900, appellant filed her second amended original petition, wherein, among other things, she alleged that on May 2, 1898, she was and for a long time prior thereto had been the owner of the south half of lot 1 in block 16 of the town of Goldthwaite, Mills County, Texas. That on February 12, 1897, while she so owned same, the house situated thereon was destroyed by fire. That prior to May 2, 1898, the defendant was owner of the north half of said lot. That before February 12, 1898, stone buildings were situated upon the north and south halves of the said lot, with a dividing wall between them; one-half of the said wall resting on the south half and the other half thereof on the north half of the said lot, and on the said last named date said buildings were destroyed by fire, as aforesaid, and the portions of the walls that remained standing were in an unsafe and ruinous con-

dition. That on the — day of April, 1898, defendant began the construction of a two-story stone building on the north half of said lot, resting the south wall thereof upon the foundation and remnant of the old wall that formerly divided said buildings, with the intention of putting windows in the upper story of said wall overlooking plaintiff's property. That as soon as it was brought to her attention that defendant contemplated putting windows in the upper story of the south wall of said building, plaintiff objected, and has at all times objected to windows, all of which defendant had notice; but against plaintiff's protest, defendant proceeded to construct said two-story building with windows in the south wall of the upper story thereof, overlooking plaintiff's property, and on May 3, 1898, and as soon as it was apparent that defendant intended to place windows in the south wall, she applied to the judge of this court for an injunction restraining him from so doing; that the injunction was granted, but the same was so qualified as to allow defendant to construct said wall with openings in the upper story thereof for windows; subject, however, to being compelled to close up the same with stone and mortar, so as to make the same a solid wall without openings, should it appear upon final hearing that the plaintiff was entitled to relief prayed for, which injunction was served on defendant May 3, 1898, who nevertheless has constructed said wall with windows therein overlooking plaintiff's property as aforesaid. That since this suit was instituted, plaintiff has constructed upon her half of the aforesaid lot a one-story stone building, in which she and her family pursue the business of merchandising. That defendant has prepared rooms in the second story of his building for offices, and a hall now occupied by the Masonic lodge at Goldthwaite; that through said windows, unauthorized persons can obtain access to plaintiff's roof, and said roof is constantly exposed to the filth which persons officing in said second story or meeting in said hall may cast upon it. That plaintiff owns a half interest in a cistern back of said buildings in which she and her family have heretofore collected and will hereafter collect water from the roof of both of the said buildings for use in their place of business, and that the water so collected is and will continue to be exposed to a contamination and infection by such filth as may be cast upon said roof through said windows as aforesaid; that the danger to plaintiff's building from fire originating in defendant's said building is and will continue to be materially increased by and on account of said windows, and her property will be materially depreciated in value if said windows are not closed; and should said windows remain in said wall, plaintiff will be prevented thereby from using the wall for the ordinary purposes of a partition wall, should she, her heirs or assigns, hereafter desire to build a second story upon her said building. Plaintiff also alleges that she has been damaged in the sum of $500 by reason of the wrongs, injuries, and trespasses above mentioned, and prays that defendant be compelled to remove said windows and to close up the openings in said wall with stone and mortar so as to make the same a solid wall without openings, and that he be perpetually enjoined from keeping

windows or other openings in said wall, and that she have judgment for her damages, etc.

On the 29th day of September, 1898, appellee filed his first amended original answer, consisting of general exceptions, general denial, and denial under oath of the material allegations of plaintiff's petition, and the further plea wherein he alleged that about the 1st day of April, 1898, desiring to build a one-story house on his property designated in plaintiff's petition, he began negotiations with one Lammers to build such house for him and to place the south wall thereof upon the remaining good part of the old wall, which had been burned; pending said negotiations said Lammers negotiated with plaintiff with reference to building said wall, and plaintiff consented to the building of same, and in a few days thereafter defendant contracted with Lammers to build said one-story house, and the work was immediately begun thereon. That afterwards, about April 5, 1898, J. J. Cox and James Rahl guaranteed that if defendant would erect on his said property a two-story building with a Masonic hall and offices for rent in the second story thereof, the Masonic lodge of Goldthwaite would lease said hall for five years at $100 per year, and defendant agreed to build same in that manner if plaintiff had no objection thereto, and then delegated and authorized one P. H. Clements to ascertain and report to defendant what objection, if any, plaintiff had to the erection of a two-story building on said property with a hall with windows as aforesaid.

That the said Clements, acting for defendant, did immediately consult plaintiff in reference to "said second-story building with hall, etc., as aforesaid," and that plaintiff consented thereto upon the condition that the south wall should be sufficiently strong to support same, which consent was immediately conveyed by said Clements to this defendant, who immediately changed his former plans regarding said building, and contracted with Lammers anew to build a two-story house on defendant's said property with a hall and offices in the second story thereof, and with openings and windows in the south wall; the cost of said new building was greatly in excess of what the one-story building would have cost. That plaintiff at the time that she consented to the building of said two-story house knew that defendant had under advisement the building thereof, wherefore defendant says that plaintiff has waived her right to claim the relief prayed for in her petition and is estopped.

On March 17th appellant filed her first supplemental petition, wherein she excepted generally, and specially denied the allegations of defendant's answer, and alleged that if at any time her conduct indicated that she consented to windows in the upper story of said wall, such conduct was without a knowledge that the same could or would be taken by defendant as a consent to said windows, or that defendant intended to act upon it; that defendant did not in fact rely upon any conduct of plaintiff, but on the contrary knew of plaintiff's objection to said windows before incurring any obligation to build said two-story house.

On the 19th day of March, 1900, the case was tried before the court without a jury, and having taken the case under advisement until March

26, 1900, the court on that day rendered judgment for the appellee, dissolving the injunction heretofore granted and adjudging that the defendant go hence without day and recover of plaintiff all costs. The court further adjudged that defendant should keep said windows screened, as they now are, so long as said windows are used in south openings, and that he shall at his own cost fill in the said windows in said party wall upon written notice from plaintiff that she desires to build upon said property a second story, and upon such notice being made in good faith, if the said Driskill should fail or refuse to close up said windows, that the sheriff of Mills County should do so, and charge the same up as costs in this case; to which judgment appellant excepted and requested the court to file its findings of facts and conclusions of law, and such findings and conclusions being filed on March 29, 1900, the same were in open court excepted to by plaintiff, who withdrew her motion for a new trial, which.was filed herein before said conclusions were filed, and gave notice of appeal from the judgment of the court to this court, and the court made an order allowing ten days for filing a statement of facts. Statement of facts was filed April 7, 1900, and on April 16, 1900, appellant filed her appeal bond.

The trial judge found the following conclusions of fact and law:

"1. I find that the plaintiff, Mrs. I. C. Everly, owns the south half of lot No. 1 in block No. 16 in the city of Goldthwaite, Mills County, Texas, and that J. W. Driskill, the defendant, owns the north half of said lot, and that said parties respectively owned and were in possession respectively of said property on and prior to May 2, 1898.

"2. I find that each of said parties owned a two-story stone building, standing respectively upon the property of each, and separated by a party wall which was common to both and which stood one-half on the property of plaintiff and one-half on the property of defendant, and I further find that said buildings were practically totally destroyed by fire on to wit, the 12th day of February, A. D. 1898.

"3. I find that after said fire, said party wall had partly fallen down, but was still standing to the height of at least one story.

"4. I find that after said fire, defendant desired to rebuild said burned building to the height of one story, and entered into a contract with B. Lammers to do the work; and that while there was no agreement between plaintiff and defendant, yet plaintiff did contract and agree with said B. Lammers to pay him $35 for putting in flashing and places for rafters on plaintiff's side of said wall, and also to cover her cost of fire wall. The understanding then being that the wall in controversy was to be erected only for a one-story building, and it being supposed that with repairs the wall would be sufficient for a one-story building.

"5. I find that afterwards defendant was induced to change his plans and erect a two-story house on his north half of said lot, by the promise of sundry persons to rent the second story thereof, provided there were south openings left in said wall; and I find further that said

south openings or windows would overlook plaintiff's south half of said lot and would overlook the roof of any one-story building that plaintiff might erect thereon.

"6. I find that when first approached on the subject, defendant was unwilling to erect said second story without consent of plaintiff, and without said parties binding themselves to rent said second story from him in case he agreed to and did erect it.

"7. I find that defendant sent H. P. Clements to inform plaintiff of his purpose to raise said wall higher than would suffice for a one-story building and to ascertain whether plaintiff would object thereto. That upon being informed by said Clements that defendant wished to raise said wall as he contemplated, the plaintiff objected on the grounds that the remains of the old wall still standing were not strong enough to sustain the additional weight of another story; that said Clements so reported to defendant, and that defendant afterwards, at his own expense, caused the old and partially injured wall to be torn down and an entirely new wall to be erected on the old foundations.

"8. I find that at the time that defendant contemplated building only a one-story building on his said lot, by the terms of his contract with the said B. Lammers, the rock work thereon, including the said party wall, was to cost him $460; that after finding that plaintiff objected to a second story on account only of the strength of said wall, that defendant changed his plans and determined to make the walls of sufficient strength, and changed his contract with said B. Lammers who agreed to build walls for a two-story house on said lot at a cost to defendant of more than $700.

"9. I further find that plaintiff refused to contribute anything towards the party wall more than $35, the original sum which she agreed to pay said Lammers for placing flashings on the south side of said wall and places therein for plaintiff to attach rafters and fire wall, and which sum she has paid.

"10. I further find that after hearing from said Clements that plaintiff only objected to the building of a second story on the ground of the insufficiency of the wall; the defendant then changed his plans (and in order to carry out the agreement with the parties who bound themselves to rent part of said second story) the defendant changed his contract with said Lammers from a one-story to a two-story wall (house) at a difference in cost to him of about $250, and then after closing said contract he left Goldthwaite on business and was gone from said town about fourteen or fifteen days.

"11. I further find that defendant would not have agreed to build said second story or raise said wall if he had known or had any notice that plaintiff objected thereto on any other ground than that of the insufficiency of said wall as to strength.

"12. I find that after defendant had so changed his plans and closed his contract and left the town of Goldthwaite, the plaintiff did object to the raising of said wall in case there were to be south openings in it, and attempted on same day to inform defendant thereof, but the de-

fendant did not receive any notice until on or about the 21st day of April, 1898, when he returned from his trip.

"13. I find that the openings in said wall would, in some small degree, increase the hazard from fire to plaintiff's said building on the south half of said lot and would increase the rate of insurance at least 5 per cent; and I further find that the erection of any building on the north half of said lot would increase in some degree the hazard by fire to the building on the south half of said lot, and that said windows would not greatly increase said hazard.

"13½. I find that since the institution of this suit plaintiff has completed a one-story rock building on her property, to wit, the south half of lot No. 1 in block No. 16, using as the north wall thereof, the said party wall, and that defendant has also completed a two-story rock building on the north half of said lot with six windows in the second story of the south wall, overlooking plaintiff's said one-story building.

"13¾. I find that this suit was instituted and the writ of injunction was sued for to prevent defendant leaving windows in said wall as soon as defendant commenced his preparations to put windows in the party wall aforesaid. Said suit having been filed herein and writ of injunction issued and served on defendant on May 3, 1898, in accordance with the fiat of the judge, which was as follows: 'The clerk of the District Court of Mills County, State of Texas, will issue the writ of injunction prayed for in the foregoing petition, but with the following limitation and modification, to wit: The defendant J. W. Driskill may proceed to construct the wall mentioned in plaintiff's petition with openings therein for windows, subject, however, to being compelled to remove such windows and to wall up such openings, so as to make said wall a solid wall, should it appear on the trial of this case that plaintiff is entitled to the relief prayed for, but the defendant is hereby enjoined from making any use of said windows detrimental to plaintiff's rights as set forth in her petition,' etc.

"14. I find that the danger of unauthorized persons gaining access to said roof of the building on the south half of said lot through the windows in said wall is inconsiderable, and that the danger of filth or other objectionable matter being thrown on said roof through said windows is not probable, because I find that the said windows are covered by a close wire netting, being the ordinary mosquito or fly screens used on doors and windows, which protects said roof from any foreign substance being thrown through said windows upon said roof.

"15. I find that plaintiff, having full notice that defendant contemplated raising said party wall, did without further inquiring from Clements as to the character or particulars thereof, object solely on the ground that the old wall was not strong enough, and that this was the sole objection reported to defendant, which he obviated by rebuilding the wall anew from the foundation thereof at his own expense, thus making the said party wall safe and substantial.

"16. I find that plaintiff did not know and was not informed by Clements that defendant expected to leave openings in said party wall

at the time that Clements informed plaintiff of the contemplated raising of the party wall by defendant; and I further find that plaintiff made no inquiry of said Clements as to the character of said wall, but limited the building of it solely as to strength.

"17. I find that there is no allegation in plaintiff's petition that the wall as raised by defendant is different from the wall as it was before the fire, but I find as a fact that the wall before the fire was a solid wall without openings.

"Conclusions of Law.—1. I find as a matter of law that the plaintiff is not estopped from claiming the right to use the second story of said wall as a party wall, should she ever see fit to do so.

"2. I find that under the law a party wall is understood to be ordinarily a solid or dead wall, but that when a party wall is erected without limitations by either party, except as to its strength, then if the party erecting it meets the requirements of the other in this respect, he may leave openings therein, provided that said openings shall not interfere with the right of the other to the use of the party wall, as a party wall, and provided further that such openings do not greatly increase the hazard by fire to the property of such other.

"Hence I conclude that under the facts in this case the defendant should not be required to close up said windows unless and until plaintiff desires to erect a second story to her building now located on the south half of lot No. 1, block No. 16, of the town of Goldthwaite, Mills County, Texas, in which event the defendant should at his own expense fill in said openings with masonry, and that until said time he shall keep said windows securely protected by wire netting or screens."

We approve and adopt the findings of fact, as above stated, with the exception of subdivisions 7 and 15, and in lieu thereof, we find that the defendant, before he concluded to raise the wall two stories, sent P. H. Clements to the appellant to ascertain if she had any objection thereto; and as testified to by the defendant, whether she would object to windows being placed in the wall. Clements did go to the appellant as the representative of the appellee Driskill, and stated to her that Driskill desired to build the dividing wall two stories. She in effect consented thereto, in the event that Driskill would make the foundation and wall of the first story safe, upon which to erect the second story. In the interview between Mrs. Everly and Clements, nothing was said by Clements to her of the purpose to place windows in the upper story of the party wall. Immediately after his interview with Mrs. Everly, and after he had left her, it was suggested to Mrs. Everly that possibly the appellee Driskill desired to put windows in the upper story of the party wall. Thereupon Mrs. Everly immediately sent her son to notify Clements that she was not willing for windows or openings to be put in the party wall; and we find that the conclusion is warranted from the evidence that this information was furnished Clements before he returned to Driskill. We find that Clements reported to Driskill that Mrs. Everly would not object, if the old wall was so strengthened as to sustain the

weight of the new wall proposed to be erected by Driskill; and Clements failed to inform Driskill of Mrs. Everly's objection as to windows.

We further find that Mrs. Everly did not know of any purpose upon the part of Driskill to place windows and openings in the party wall until after this interview with Clements, and that she never consented that such openings should be placed in the wall; but, upon the contrary, after she had obtained knowledge that such was the intention of Driskill, she repeatedly protested against openings being left in the wall for windows.

We further find that there were no words or conduct upon the part of Mrs. Everly that would estop her, or that misled the appellee. It is clear under the findings of the court that the wall in question was a party wall. In a wall of this character, openings are not permissible, except by the consent of the adjoining owner. No right arises by reason of the convenience that would result to one of the owners of the party wall, and the absence of injury to the other, by reason of openings in it. A party wall, in the absence of an agreement to the contrary, necessarily means a solid wall; and the fact alone that the appellant did not consent to the erection of a wall with windows is sufficient to entitle her to the relief she prayed for in her petition. Dauenhauer v. Devine, 51 Texas, 480; Graves v. Smith, 13 Am. St. Rep., 61; Harbor v. Evans, 20 Am. St. Rep., 646; Fidelity Lodge v. Bond, 45 N. E. Rep., 338; same case on rehearing, 46 N. E. Rep., 825; 18 Am. and Eng. Enc. of Law, p. 4 (foot note).

But the case before us is stronger than the proposition stated, for here the evidence is conclusive upon the point that the appellant objected from the beginning to windows being placed in the wall, and when she found out that notwithstanding her objections the appellee intended to so place the windows, she took prompt and immediate steps to prevent it.

The case of Dauenhauer v. Devine holds that injunction is the proper remedy in a case of this character, and that case, together with the other authorities cited, hold in effect that irreparable injury need not be shown in order to entitle plaintiff to relief. The invasion of her right to the protection afforded by a solid party wall is all that is necessary in order to invoke the aid of a court of equity.

The conclusion that we reach is that the judgment of the court below will be reversed, with instructions to the trial court to render judgment in appellant's favor as prayed for, to the effect that the appellee be required to close up the openings in the wall, and thus he and his assigns and legal representatives perpetually restrained from placing openings in the wall, under such penalties as the trial court may deem just upon his failure or refusal to comply with the order; said wall to be made solid, of the same class of material as the other portions of the wall.

*Reversed with instructions.*

Writ of error refused.