R. R. Murray v. W. T. M. Dickson.

Decided November 20, 1909.

Easement—Right to Repair.

The owner of a pass-way easement across a strip of land has the right to repair the fences around said land when they fall into decay, so as to prevent his cattle when passing over said land from trespassing upon the adjoining cultivated land of the owner of the fee, and so maintain the full use and enjoyment of the easement. The rights of the owner of an easement are paramount, to the extent of the grant, to those of the owner of the fee.

Error from the District Court of Ellis County. Tried below before Hon. F. L. Hawkins.

*Farrar & McRae,* for plaintiff in error.—The court erred in holding, under the facts in this case, that the plaintiff had the right, and in giving him the right, to entirely fence the easement owned by him, the plaintiff, over the land the fee to which was owned by the defendant. Sizer v. Quinlan, 33 Am. St. Rep., 55; Burnet v. Crane, 44 Am. St. Rep., 395; Brill v. Brill, 108 N. Y., 511; Dillon v. Kansas City Ry. Co., 67 Kan., 687, 74 Pac., 251; Washburn on Easements, 188; 6 Am. & Eng. Ency. of Law, 152.

*Supple & Harding,* for defendant in error.

RAINEY, Chief Justice.—This is an injunction suit brought by defendant in error to restrain plaintiff in error from interfering with the use of an easement over a strip of land.

The nature and result of the suit as stated in plaintiff in error's brief is substantially correct, and is as follows: The plaintiff, W. T. M. Dickson, filed his petition in the District Court of Ellis County on the 21st day of April, 1908, alleging in substance that on the 25th day of April, 1906, plaintiff obtained a judgment in the District Court of Ellis County, Texas, against the defendant, establishing a perpetual easement over a tract of land consisting of about one and one-half acres, the fee to which belonged to defendant, Murray, said tract of land being fully described in said petition; that the fee ownership of the land was at that time, and has ever since been, in defendant. It was also alleged that plaintiff had owned said passway or easement over said tract of land since September 15, 1886, having acquired the same at the time by purchase from one A. G. McSpadden, the then owner of the fee, and that at the time of the rendition of said judgment and at the time of said purchase there was a strong and sufficient fence on the north and east side of said easement tract capable of turning cattle, and that it remained so until recently. It was further alleged that defendant, Murray, owned and cultivated a tract of land lying north and east of said easement tract, and contiguous thereto; that he had planted, and was growing on said land oats, which were tempting to the live stock of plaintiff in passing over said easement tract in going to the plaintiff's pasture lying to the north thereof, and that it was necessary for plaintiff, in order to water and pasture his cattle, to use said easement,

It was also alleged that after the rendition of said judgment the defendant so changed and weakened the fence on the north and east of said easement tract as to render it insufficient to turn live stock and keep them out of defendant's oats; or that defendant had allowed said fence to become so insufficient that plaintiff's stock, and those being pastured by him, when turned into said easement for the purpose of going to water and pasture, would get into defendant's oats and thereupon be impounded by him and held until impounding fees were paid by the plaintiff; that plaintiff had requested defendant to repair said fence, or permit him, plaintiff, to do so, but that both requests had been refused. It was further alleged that these acts upon the part of defendant deprived the plaintiff from the use and enjoyment of said passway easement, and that the defendant threatened violence to any one attempting to repair said fence, or attempting to build a fence along the north and east line of said easement tract, and the plaintiff prayed for an injunction against the defendant restraining him from interfering with the plaintiff in building said fence, and after it had been so built and repaired from interfering with plaintiff's free and full use for any and all purposes on said easement passway.

The court granted the plaintiff a temporary restraining order in accordance with the prayer in said petition, and such writ was issued on the 21st day of April, 1908, which was in due time served upon the defendant. At the September term, 1908, of said court, and on the 5th day of November, 1908, the defendant filed his answer alleging, in substance, general and special exceptions, general denial and special answer substantially as follows: That since the granting of the temporary injunction herein the plaintiff has built a strong fence along and near the north and east lines of said easement tract; that such fences, together with other fences, not under the control of defendant, entirely exclude him from the use, occupancy and benefits to which he has a right as the fee simple owner of said tract of land, and should said injunction be made perpetual he would be compelled to reach said easement tract by going over plaintiff's land, which plaintiff has forbidden him to do, and that this defendant would thereby be deprived of all the rights incident to his ownership of the land; that since the building of said fences plaintiff has converted and appropriated said easement tract for pasturage purposes and has deprived defendant of all use and products of the same and has himself appropriated and enjoyed all the use and products of the same, which are incident to the fee simple ownership of said easement tract, and that plaintiff will continue such unlawful and inequitable use and appropriation of defendant's right to said land unless the injunction herein prayed for, and temporarily granted, be dissolved.

The plaintiff filed his first supplemental petition on the 5th day of November, 1908, urging general exception, general denial and special answer, in substance as follows: That the matters of defense urged by the defendant had been fully litigated in cause No. 6791, in Ellis County, Texas, in which Dickson was plaintiff and Murray was defendant, they being the only parties to said suit, the same having been

tried in the District Court of Ellis County, and decided adversely to defendant.

The case was tried on the 6th day of November, 1908, before the court, a jury having been waived by both parties, and judgment rendered for the plaintiff perpetuating the temporary injunction and forever enjoining the defendant from interfering with the plaintiff in the full and free use as a passway over, along and across the said tract of land, and forbidding the defendant from in any way interfering with the plaintiff in the building and maintaining a line of fence on said passway or easement along the north and east line thereof, directing him to place and maintain a gate in such fence sufficiently wide and large for wagons and teams to pass through, and the defendant enjoined from leaving said gate open, but shall at all times, after passing through, close and securely fasten same, so as to prevent stock from passing through; to which judgment the defendant in open court excepted and gave proper notice of appeal, but the time for filing his appeal bond having expired before filing same, he brings this case to this court upon a writ of error.

The trial court's findings of facts, which are adopted by this court, are as follows:

"1. The court finds that on September 15, 1886, plaintiff, W. T. M. Dickson, purchased from A. C. McSpadden about one and one-half acres of land for a passageway between a small pasture and a large pasture belonging to plaintiff, which passageway is fully described in the judgment.

"The said purchase was evidenced by a deed made at the time by McSpadden to plaintiff, which is duly recorded in Ellis County deed records.

"The deed did not convey the absolute title to the land, but conveyed a perpetual easement and passageway over the same for all purposes.

"A map is attached hereto for the purpose of explaining the location and situation of the passageway and surroundings and for the better understanding of the findings in this case, as follows:

"The passageway or easement is located on the map and designated as 'A, B, C and D.'

"2. That prior to the time plaintiff purchased this easement from A. C. McSpadden the passageway then acquired by plaintiff to the land now belonging to defendant Murray was owned by one Jennings, the inclosure of Jennings being practically shown by the line 'B, C;' and while he owned the land up to the graveyard fence the passageway had never been fenced by him, by reason of the way the branch ran through it and the character of the land; the plaintiff had used this passageway for a number of years for his cattle to pass freely through from the small pasture and his barn-lot to the large pasture.

"That after McSpadden had acquired the property now owned by the defendant the plaintiff purchased the easement over said passageway, as shown in paragraph one of these findings.

"3. That at the date of said purchase said passage was open so that stock could pass from the barn-lot and small pasture of plaintiff on the south of the graveyard and the large pasture on the north of

said graveyard, through which large pasture ran the creek where said stock could water; said passageway being bounded on the east by a line of fence and on the west by the graveyard fence.

"4. That plaintiff continued to use said passageway for the passage of his stock from the time of his said purchase, without any obstruction, until about January 1, 1905, when defendant, who had by mesne conveyances become the owner of the title to the said passageway subject to the easement of plaintiff, and also owned the land immediately east and north and adjoining the said passageway, which said land immediately east thereof was at the date of the said purchase of plaintiff from said McSpadden separated from said passageway by a line of fence; that on said January 1, 1905, defendant constructed a fence along 'the north of said passageway, connecting the same with the graveyard fence so as to obstruct the passage of plaintiff's stock from one pasture to the other through the said passageway. Whereupon plaintiff in this court petitioned an injunction, which was on the 25th of April, 1906, by final judgment, made perpetual, and the defendant thereby enjoined forever from in any way interfering with plaintiff from the use of the passageway over said strip of land, and ordering the obstructing fence to be removed, which was accordingly done.

"5. That about the first of April, 1908, the defendant had allowed the east line of fence along the said passageway to become out of repair so that it would not turn stock, and plaintiff's stock, while passing through said passageway, would go through the said defective fence and go upon the cultivated land of defendant, and defendant would impound the same and charge sums of money, which plaintiff would have to pay in order to get his stock. That defendant refused to repair the said fence, and refused to permit the plaintiff to repair the same, and also refused to permit plaintiff to build a line of fence along the east side of the said passageway to keep his stock from getting upon the said cultivated land of defendant; and that the defendant built a pen not far from said defective fence for the purpose of impounding the stock of plaintiff; whereupon this suit was filed and a temporary injunction granted.

"6. That the refusal of defendant to repair the said east line of fence or to allow the plaintiff to do the same, or to allow the plaintiff to build a line of fence on said passageway along the east and north sides thereof in order to prevent plaintiff's stock from getting upon the cultivated land of defendant, practically destroyed the said passageway and easement in so far as plaintiff's use of the same is concerned, or in so far as the same is of any use or benefit or has ever been used by him.

"7. That the above findings of facts are in addition to those embraced in the judgment."

The deed from McSpadden to Dickson conveys "the passway for any and all purposes in, through and across" the strip, describing it by metes and bounds, and reciting, "but it is expressly understood that nothing herein contained shall be construed as transferring any portion of the land or the products of the same, but the sole purpose is to maintain a perpetual passway for said Dickson and his assigns, and

granting to them the right to keep the same clear of any obstructions, and passable for the uses intended."

The question involved is: Whether or not Dickson has the right to keep and maintain a fence along and near the north and east line of an easement over a certain piece of land, Dickson contending that such fence is necessary to the full use and enjoyment, while Murray, the owner of the fee, contends that such fence is not necessary for such use and enjoyment, that the grant does not convey the right to fence, and that the right to keep and maintain same is an undue restriction of his rights as owner of the fee in said land.

The granting of an easement over land burdens the fee and makes it servient to the purposes of the easement. Dickson had been granted for value a perpetual "passway for any and all purposes in, through and across" a portion of the land owned by Murray, and Dickson is entitled, without hindrance from the fee-holder, to such rights as are incident or necessary to the enjoyment of such easement. Harvey v. Crane, 12 L. R. A., 601.

In the case just cited, where the right to fence an easement was involved and in principle very similar to the case at bar, the court sums up the adjudications as to easements as follows: "(1) That the conveyance of a right of way gives to the grantee not only a right to an unobstructed passage at all times over defendant's lands, but also such rights as are incident or necessary to the enjoyment of such right or passage. Maxwell v. McAtee, 9 B. Mon., 21; Bliss v. Greeley, 45 N. Y., 671; Herrman v. Roberts, 119 N. Y., 37, 7 L. R. A., 226. (2) The owner of the way where its limits are defined, has not only the rights of a free passage over the traveled part, but also to a free passage on such portions of the way as he thinks proper or necessary. Herrman v. Roberts, *supra*. (3) The owner of the fee subject to an easement, may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement. East Tennessee, V. & G. R. Co. v. Telford (Tenn.), 14 S. W., 776; Herrman v. Roberts, *supra;* Cooley, Const. Lim., 691. (4) The rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil. Herrman v. Roberts, *supra;* East Tennessee, V. & G. R. Co. v. Telford, *supra;* Kansas Cent. R. Co. v. Allen, 22 Kan., 285. (5) The owner of the soil is under no obligation to repair the way, as that duty belongs to the party for whose benefit it is constructed. Herrman v. Roberts, *supra.* (6) What may be considered a proper and reasonable use by the owner of the fee, as distinguished from an unreasonable and improper use, as well as what may be necessary to plaintiff's beneficial use and enjoyment, are questions of fact to be determined by the trial court or jury. Bakeman v. Talbot, 31 N. Y., 366; Huson v. Young, 4 Lans., 64; Prentice v. Geiger, 74 N. Y., 342; Herrman v. Roberts and Kansas Cent. R. Co. v. Allen, *supra.*"

Then do the facts show that it was necessary to the enjoyment of said easement for Dickson to erect the fence on said line, as indicated? The court has said, in effect, that it was, and we are not inclined to differ from that finding.

In 1886, when Dickson acquired the easement by grant, there was a line of fence on the north and east, which separated the right of way from the Murray tract, and Dickson, prior to that time and up to the time of Murray's purchase, had been using the passway by allowing his cattle to go into a small pasture adjacent to his dwelling and drift through the passway into a larger pasture. It is evident that this manner of using the easement was in contemplation by the parties when the grant was made and must have been known to Murray when he purchased. Murray failed to keep his fence in repair and, though requested, refused to allow Dickson to repair said fence or erect a new one. The consequence was that Dickson's stock went through the fence and depredated on Murray's crop. Murray built an impounding pen, impounded said stock and caused Dickson to pay him impounding fees to recover the stock. Under these facts it seems to us the trial court was perfectly justifiable in finding the building and maintaining a fence on the north and east line of the easement was a necessary incident to the reasonable and proper enjoyment of said easement.

The court in authorizing Dickson, under the circumstances, to erect a fence along said line and requiring him to erect a gate through same for Murray's use, was not inconsistent with Murray's rights as owner of the soil. As has been said, the rights of Dickson, the owner of the easement, are paramount to the extent of the grant to those of Murray, the owner of the soil, and Murray must yield to conditions brought about by his own acts that made it necessary to Dickson's enjoyment of the easement that the fence be erected.

We are of the opinion that a proper and just judgment has been rendered in this case, and it is affirmed.

*Affirmed.*    •