W. H. SIMPSON et al., Appellants,

v.

PHILLIPS PIPE LINE COMPANY, Appellee.

No. 8484.

Court of Civil Appeals of Texas, Beaumont.

July 17, 1980.

Rehearing Denied Aug. 14, 1980.

308

David Spencer, Jim E. Maggard, Jr., Austin, for appellants.

Kent R. Rider, Austin, for appellee.

KEITH, Justice.

The principal question presented by this appeal is whether the much criticized doctrine of trespass ab initio will be applied to actions involving the use of an easement in land, and a subsidiary procedural problem ancillary to the appeal. We affirm for the reasons now to be stated.

### 1. Factual Recitation

At all times material to this suit, the plaintiffs owned a tract of land consisting of 99.6 acres located to the west of the City of Austin which was intersected by the Travis-Hays County Line and Barton Creek. Three different pipelines crossed the property in a general east-west direction, the Phillips line being the middle pipeline. In

1973, Phillips began replacement of its line and a dispute arose between the Simpsons and the company.

Phillips then sought an injunction to restrain the Simpsons from interfering with its work and the Simpsons filed a cross action for damages to the land. After the completion of the pipeline work, Phillips dismissed its suit for an injunction and the Court realigned the parties with the Simpsons as plaintiffs and Phillips as defendant.

In the first trial, the jury found (1) that Phillips used areas of the Simpson land which "exceeded those areas reasonably necessary to lay the pipe line in an efficient manner"; (2) the width of the area and the number of feet necessary for Phillips to use in the construction of its line; and (3) the width of the number of feet used by Phillips in excess of those widths found necessary in answer to No. 2. In answer to Nos. 4 and 5, the jury found the reasonable market value of the entire tract before and the reasonable market value after the completion of the pipeline.[1]

■ The last two issues were submitted over the objection of Phillips which correctly pointed out that since Phillips owned an easement across the tract the width of which was not set out in the written easement, Phillips would be liable for injuries to ' the land only to the extent it exceeded that reasonably necessary for its use. *Sun Pipe Line Co., Inc. v. Kirkpatrick*, 514 S.W.2d 789, 792 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.), and authorities therein cited.

After receipt of the verdict, the trial court sustained Phillips' motion to disregard the answers to Special Issues Nos. 4 and 5, and granted a partial new trial confined to the question of damages. On the second trial, the jury found the damages with reference to the excess land used by Phillips

and judgment was entered for the Simpsons for such amount. The Simpsons have appealed upon three points of error set out in the margin,[2] all of which are confined to claims of error following receipt of the first jury verdict.

### 2. Trespass ab initio

The fundamental and underlying thrust of each of the points of error is that the trial court refused to apply the doctrine of trespass ab initio to the case at bar.

The leading authority cited by the Simpsons is *Humphreys Oil Co. v. Liles*, 262 S.W. 1058, 1063–1064 (Tex.Civ.App.—Waco 1924), affirmed and judgment adopted, 277 S.W. 100 (Tex.Com.App. 1925). The decision of the intermediate court cites some texts and old cases from foreign jurisdictions but none from our own state in support of its holding. An examination of the authorities cited indicates that the Court actually was treating the cause of action as one of nuisance, not trespass.

Of even more importance, the Commission of Appeals did not mention the doctrine of trespass ab initio. Instead, Judge Speer discussed the sufficiency of the pleadings, the question of assumption of facts in issues submitted to the jury, the law relating to abandoned personal property, and the rejection of special issues.

The Simpsons cite two other cases in support of the application of the doctrine of trespass ab initio to the case at bar. In citing *American Mortgage Corporation v. Wyman*, 41 S.W.2d 270, 273 (Tex.Civ.App.— Austin 1931, no writ), which quotes at length from *Humphreys*, the Simpsons admit that it "is factually dissimilar to this case." We agree. Indeed, *American Mortgage* was a venue appeal involving the conversion of an automobile by the mortgagee.

---

1. The jury also found the market value of the cost of repairs to the house of one of the plaintiffs; but, since the final judgment awarded such sum to the individual plaintiff and no party complains of such action, it will not be noticed further.

2. *Point one:* "The trial court erred in denying appellants' motion for final judgment." *Point two:* "The trial court erred in granting appellee's motion to disregard the jury's answers to Special Issues Numbers 4 and 5." *Point three:* "The trial court erred in granting appellee's motion for a separate trial on the issue of damages."

The other case relied upon following *Humphreys* is *Brite v. Pfeil*, 334 S.W.2d 596 (Tex.Civ.App.—San Antonio 1960, no writ), involving a stray calf found upon a public highway after it had fallen from a pickup truck. We have found one other case citing *Humphreys* : *Martin v. Martin*, 246 S.W.2d 718, 720 (Tex.Civ.App.—Fort Worth 1952, no writ). The *Martin Case* involved a dispute between two brothers concerning a private sewer line. *Humphreys* was cited as *see also* following a reference to a text involving the law of nuisance.

Counsel for the Simpsons, in contending that the doctrine is applicable to this case, argues:

"Phillips Pipe Line Company had a lawful right to enter the Simpson's land and to do whatever was reasonably necessary for the full enjoyment of their easement. Phillips exceeded this right, as the Jury found in its answers to Special Issues Nos. 1 and 3, and thereby became a trespasser ab initio, and responsible for all damages done by its acts to the Simpson property. . . . The trial court should have entered judgment on the basis of those answers [to Special Issues Nos. 4 and 5]."

We reject the attempted application of the doctrine to the fact structure now before us. First, we point out that *Humphreys* did not involve land—it was basically a conversion suit involving escaped oil and the law of nuisance. *Brite, American Mortgage*, and *Martin*, mentioned earlier, did not involve land nor did any of such cases relate to the rights and liabilities of an easement holder using the property covered by the easement.

■ In *75 Am.Jur.2d, Trespass § 17, at 21* (1974), the author says:

**3.** Comment on Subsection (2):
"e. Subsection (2) rejects, as to entries on land which are originally privileged, the doctrine of trespass ab initio. . . .
"Trespass ab initio was a peculiar and anomalous fiction developed by the early common law, by which one who entered properly upon land in the exercise of a privilege conferred by authority of law, and subsequently abused the privilege by conduct which was itself a trespass . . . became

"The doctrine of trespass ab initio has been called 'a curious and unique fiction,' and has been vigorously denounced by writers who have discussed it. The Restatement of Torts has rejected the doctrine."

We join in the rejection of the doctrine.

The text cited immediately above refers to *Restatement of the Law (Second), Torts 2d, § 214(2) (1965)*, reading:

"One who properly enters land in the exercise of any privilege to do so, and thereafter commits an act which is tortious, is subject to liability only for such tortious act, and does not become liable for his original lawful entry, or for his lawful acts on the land prior to the tortious conduct."

We quote a few sentences from the Comment upon subsection (2) of Section 214 in the margin[3] and mention in passing the expanded comments of Dean Prosser in the Reporter's Notes as reported in *Restatement of the Law (Second), Torts 2d, Appendix, § 214, at 234 (1966)*. Prosser is even more emphatic in his own text, *W. Prosser, Law of Torts, § 25, at 129, 131 (4th Ed. 1971)*, concluding that "there is good reason to expect that the entire doctrine is on its way to oblivion."

The imposition of liability retroactively through use of the doctrine is also condemned in *1 Harper & James, The Law of Torts, § 1.21, at 58 (1956)*. Indeed, the same authors say that it was "the judges [who] devised the treacherous fiction of trespass ab initio." *§ 3.22, at 297*.

The modern rule is more in keeping with that set out in the black statement as found in *87 C.J.S. Trespass § 16b, at 969 (1954)* :

liable not only for the later misconduct, but also for the original lawful entry. The abuse of the privilege was related back to forfeit it entirely, and the actor became a trespasser 'ab initio,' or from the beginning.
\* \* \* \* \* \*
"Since 1900 the weight of authority has rejected trespass ab initio, and there have been very few cases in which it has been applied. . . ."

"Generally, one who enters on or takes property under authority or license of the possessor does not become a trespasser ab initio by abusing his authority." Instead, as set out in *Restatement, Torts 2d, § 214(2)*, supra, he "is subject to liability only for such tortious act, and does not become liable for his original lawful entry, or for his lawful acts on the land prior to the tortious conduct."

This is precisely the rule of law which was applied to the facts in the case at bar. Instead of allowing the Simpsons to recover for damage to their entire tract under the trespass ab initio theory, the trial court permitted a recovery for damages to the area of excess use—0.455 acres; with no damages to the area of reasonable use—3.105 acres. And, since none of the remaining land of the Simpsons was damaged by the work of Phillips, no recovery was allowed.

The second jury awarded the Simpsons the recovery to which they were entitled under the law—the damages sustained by them from the use by Phillips of the excess area. And, we should remember, the Simpsons do not complain of error in either the submission of such damage issue or of the inadequacy of the award.

■ Thus, a just and fair result was reached whereby the land owners were compensated fairly by the jury for the tortious act of Phillips, and the latter was not penalized by an outworn legal theory having no place in our modern jurisprudence. Point one is overruled.

### 3. The Procedural Questions

Under our prior holding, we have concluded that the trial court erroneously submitted Special Issues Nos. 4 and 5 to the jury upon the first trial. Indeed, all we have done is to approve the trial court's correction of such mistake by refusing to give effect to such findings. We note that Phillips properly objected to such issues before submission.

■ The trial court, in setting aside such findings, held that the doctrine of trespass ab initio did not apply to the holder of an easement when it entered upon the property covered by the easement, even though a tortious act may have been committed after entry. Thus, special issues finding the market value of the entire tract before and after the entry of Phillips thereon were immaterial.

■ Under *Tex.R.Civ.P. 301*, "A jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial." *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). And, such an issue is immaterial when it should not have been submitted. *C. & R. Transport*, supra, quoting with approval, *McDonald, Texas Civil Practice, § 17.31* [now to be found in *4 McDonald at 199 (1971 Rev.Vol.)*]. See also, *Blue Bell, Inc. v. Isbell*, 545 S.W.2d 563, 566 (Tex.Civ.App.—El Paso 1976, no writ). Point two is overruled.

In the third point of error, the Simpsons complain of the granting of Phillips' motion for a separate trial on the issue of damages alone. The motion of Phillips was predicated on *Tex.R.Civ.P. 174(b)*, quoted in the margin.[4] The use of the word "may" in the rule has been held to import the exercise of discretion. *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 683 (1956).

■ Although not cited by the parties, we recognize the rule set out in *Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648, 649, 85 A.L.R.2d 1 (1958), that the *Rule 174(b)* does not "authorize a separate trial of the damage issues and the liability issues in a suit for damages for personal injuries." We also recognize, as indeed we must, that the Supreme Court has held several times that issues of liability and damages in tort cases are indivisible and that it is improper to reverse a judgment and remand the case

---

4. *Rule 174(b)*: "Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

for trial on the issue of damages alone. See *Roberts v. Mullen*, 446 S.W.2d 86, 89 (Tex. Civ.App.—Dallas 1969, writ ref'd n.r.e.), and authorities therein cited.

In 1975, the Supreme Court amended *Tex.R.Civ.P. 434* and *503*, applicable to the Courts of Civil Appeals and the Supreme Court, respectively, to provide for a new trial only as to the part of a judgment affected by error.[5] Phillips did not contest liability upon the second trial and the Simpsons have not asserted error insofar as the liability issues are concerned.

No good reason has been assigned for the attack upon the separate trial of the damage issue; nor has any reason been assigned which would justify requiring the trial court to try again the liability issues when the only real question remaining was the amount of damages to which the Simpsons were entitled. We are in accord with the views expressed in *McKellar v. Bracewell*, 473 S.W.2d 542, 546 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.):

> "It appears, however, that the rule of *Iley v. Hughes* has been applied primarily in personal injury tort actions. It is recognized that such cases have been accorded a special place in the jurisprudence of our State. By the express terms of Rule 174(b), supra, the trial court has wide discretion to order separate trials when judicial convenience is served and prejudice avoided. In the present case, the order granting separate trials served these salutary purposes."

See also, J. Pope and D. Sheehan, Jr., " 'Try, Try, Again . . .' A Proposal to Limit the Scope of New Trials in Texas", 7 *St. Mary's L.J. 1, 12–13 (1975)*. The third point of error is overruled.

The judgment of the trial court is AFFIRMED.

CLAYTON, J., not participating.

---

5. The wording is identical in each rule: ". . . provided that a separate trial on unliquidated damages alone shall not be ordered

*if liability issues are contested."* (emphasis supplied)