07-11-00404-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 28, 2012

KYLE L. AND BEVERLY B. GREENWOOD, APPELLANTS

v.

MARTHA JOY LEE N/K/A MARTHA L. CLANTON, APPELLEE

FROM THE 272ND DISTRICT COURT OF BRAZOS COUNTY;

NO. 09-002318-CV-272; HONORABLE TRAVIS B. BRYAN III, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellants, Kyle and Beverly Greenwood, defendants and counterplaintiffs below, appeal the trial court's summary judgment which declared the scope of an easement and respective rights of the Greenwoods as owners of the dominant estate and neighboring servient estate owner, Martha Lee (now known as Martha Clanton), plaintiff and counterdefendant below. The Greenwoods challenge the trial court's narrow interpretation of the express easement and the limitations on their rights to use the easement. We will affirm in part and reverse and remand in part.

Factual and Procedural History

In rural Brazos County, Clanton owns a ten-acre tract of land which she uses for residential and ranching purposes, and the Greenwoods own a neighboring forty-acre tract they purchased in 2009.[1] The Greenwoods' property is landlocked and connected to Steep Hollow Road, a public road, by means of an "[e]asement and right-of-way" over Clanton's property. The Greenwoods decided to build a residence on their land and, in furtherance of that development, sought to run utility lines along the easement burdening the Clanton property. Clanton resisted their efforts, asserting that the easement was limited to a means of ingress and egress only per the express terms of the easement. Clanton sued, seeking declaratory relief to the effect that the easement was so limited.

The Greenwoods answered and filed a counterclaim seeking declaratory relief of their own on issues concerning widening and improvement of the road and obstruction of the easement by locking gates. The Greenwoods took and have maintained the position that the easement was more general in nature and permitted them three things in addition to a simple means of ingress and egress: (1) the right to construct and lay utility lines to their property over and across the Clanton property, (2) a means of ingress and egress that is unobstructed by locked gates, and (3) the right to improve and widen the access road so as to encompass the entirety of the forty-five feet included in the creation of the express easement.

---

[1] More precisely, Clanton and the Greenwoods own tracts measuring, 10.62 acres and 40.5 acres, respectively.

Clanton moved for partial summary judgment that the easement was limited in purpose to a means of ingress and egress only from the Greenwoods' property to Steep Hollow Road. The trial court granted partial summary judgment on this issue. More specifically, the trial court concluded that the 2009 deed to the Greenwoods granted them "the right to use the Easement for an access road for ingress and egress only and does not grant the right to place any utilities on, under, above[,] or in such Easement."

Subsequently, Clanton moved for no-evidence summary judgment on the widening, improvement, and gate issues raised in the Greenwoods' counterclaim for declaratory relief. The trial court granted Clanton's no-evidence motion for summary judgment and, in pertinent part, concluded as follows:

> 1. The Easement allows ingress and egress from Steep Hollow Road across the 45-foot wide strip of land described more particularly in the Easement (the "45-Foot Easement Strip") to access the dominant estate property currently owned by Defendants Kyle and Beverly Greenwood. . . .
>
> 2. The Easement only allows as much use of the 45-Foot Easement Strip as is necessary for the full enjoyment of the Easement, which shall be limited to a roadway for ingress and egress that is no wider than twenty (20) feet. The Easement also allows use of the roadway for purposes of transporting loads in excess of twenty (20) feet as may be necessary during construction and development of the Greenwood Property, the Easement further allows the construction, maintenance, repair, and replacement of an all-weather road over the existing gravel roadway along the entire length of the 45-Foot Easement Strip, which road may be paved and include suitable drainage. All expense of construction, maintenance, repair, and replacement of the all-weather road shall be borne by the beneficiaries of the Easement, absent other agreement.

3

3.  The Easement allowed the installation of a gate at the entrance to Plaintiff's property (the "Clanton Gate") and at the entrance to the Greenwood Property (the "Greenwood Gate").[2] . . . .

. . . .

6.  The Greenwoods and their heirs and assigns are permanently enjoined from the installation of utilities or communications lines running in, on, under, or over the Easement.

7.  The easement described as Tract II in the [2009] cash warranty deed . . . grants to Defendants the right to use such easement for an access road for ingress and egress only and does not grant the right to place any utilities on, under, above or in such easement. . . . .

The trial court also references the application of the provisions to the easement recorded in 1964.

It is in this posture that the Greenwoods' appeal comes to this Court. In three issues, the Greenwoods challenge the trial court's granting of partial summary judgment limiting the scope and purpose of the easement over the Clanton property. They also challenge the trial court's conclusion, by way of no-evidence summary judgment, that the Greenwoods failed to show that (1) they were entitled to widen the road to the entire forty-five feet encompassed in the easement and (2) they were entitled to passage across the easement unobstructed by gates.

Summary of the parties' positions on appeal

The Greenwoods maintain on appeal that, despite the very clear language in the 2009 cash warranty deed by which they came to own their forty-acre tract and the easement burdening the Clanton property, the language used in 1964 to create the

---

[2] The trial court's very specific instructions regarding the installation and operation of the gates will be recited in their entirety later in the opinion.

4

easement–"[e]asement and right-of-way"–was not so limited and that the "[e]asement and right-of-way" grants them the right to install utility lines on, under, and above the easement to service their tract of land. The trial court, having before it the language creating the easement in 1964 through each conveyance up to the Greenwoods' 2009 purchase of the property and the "access road," disagreed, concluding that the easement permitted the Greenwoods a means of ingress and egress only and expressly concluded that it did not grant them the right to install, maintain, replace, or repair utility lines on, under, above, or in the easement as the Greenwoods had designed.

Clanton, servient estate owner, maintains that the easement is more restricted, that its scope is limited to an access road to be used only for ingress and egress to the landlocked Greenwood property such that the dominant estate may have access to Steep Hollow Road. Clanton has used her property for ranching purposes since she acquired the property in 1981, and, since 1981, there has been a gate at the entrance to her property. She has provided the Greenwoods the combination to the lock so that they may pass through whenever the gate is locked. She maintains that the gate is permitted and that the Greenwoods may not widen and pave the road to encompass the entire forty-five feet provided in the express terms of the easement. The Greenwoods challenge the trial court's summary judgment on the scope of the easement and the trial court's no-evidence summary judgment as to the width and gate issues.

Chain of conveyances relating to the easement

In April 1964, Laura M. Hicks and J.L. Mims conveyed to J.E. Weedon Jr. the following:

5

An Easement and right-of-way over a certain tract or parcel of land situated in the R. Perry League in Brazos County, Texas, and being a part of a tract of 50 acres described as "First" tract in deed from J.L. Mims to M.P. Mims, et al., dated February 10, 1923, and recorded in Book 60, page 595, Deed Records of Brazos County, Texas, the portion of said tract over which the easement is hereby conveyed being a strip of land 45 feet in width off the extreme Northeast side of said tract, – containing 2.06 acres of land, more or less.

Months later, in November 1964, Weedon conveyed to the Veterans' Land Board of the State of Texas "a 45 ft. wide strip, parcel or tract of land to be used as an access road." Shortly thereafter, in December 1964, the Veterans' Land Board conveyed to Everett R. Briggs "an easement and right-of-way . . . to be used as an access road."

Decades passed and, in 2009, Greenwoods purchased from Briggs the forty-acre tract and "a forty-five foot (45') access easement" by cash warranty deed which expressly incorporated field notes describing the easement as "a 45 ft. wide strip or tract of land to be used as an access road." During the pendency of this suit, the Greenwoods negotiated a transfer from J.E. Weedon of any rights or interests that may have remained vested in him since November 1964 with respect to the easement.

Scope of the Easement

Standard of review for traditional summary judgment

We review the trial court's decision to grant summary judgment *de novo*. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Id. A trial court properly grants a motion for summary judgment when the movant has

6

established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. See TEX. R. CIV. P. 166a(c); Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003). When the trial court does not specify the grounds for its summary judgment, the appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. Knott, 128 S.W.3d at 216.

General principles governing express easements and their construction

An easement confers upon one person the right to use the land of another for a specific purpose. Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 700 (Tex. 2002); Lakeside Launches, Inc. v Austin Yacht Club, Inc., 750 S.W.2d 868, 871 (Tex.App.—Austin 1988, writ denied). An easement does not convey the property itself, but it does carry with it the right to do whatever is reasonably necessary for full enjoyment of the rights granted. See Roberts v. Friendswood Dev. Co., 886 S.W.2d 363, 367 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Easement holders, although not occupiers of the property subject to the easement, have a duty to use ordinary care regarding the use of the easement. Id. The easement holder has a duty to maintain the easement, and the owner of the servient estate has no right to interfere with the dominant estate. Id.

Interpretation of contracts granting easements are reviewed *de novo*. Ferrara v. Moore, 318 S.W.3d 487, 490 (Tex. App.—Texarkana 2010, pet. denied). Basic principles of contract construction govern the terms of an express easement. Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth., 258 S.W.3d 613, 616 (Tex. 2008).

7

An easement should be interpreted to give effect to the intentions of the parties as ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created. Marcus Cable, 90 S.W.3d at 701. That is, "[t]he contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest." Id. at 700–01. Nothing passes by implication as incidental to the grant of an easement "except what is reasonably necessary" to fairly enjoy the rights expressly granted. Id. at 701 (quoting Coleman v. Forister, 514 S.W.2d 899, 903 (Tex. 1974)).

So, the well-established rule is that actual language of the grant controls: "Where an easement is created by express grant or reservation, the extent of the right acquired depends not upon user, as in the case of easements created by prescription, . . . but upon the terms of the grant or reservation properly construed."[3] Kearney & Son v. Fancher, 401 S.W.2d 897, 905 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); see Koelsch v. Indus. Gas Supply Corp., 132 S.W.3d 494, 498 (Tex.App.—Houston [1st Dist.] 2004, pet. denied) (observing that, "[u]nless the language is ambiguous, we rely

---

[3] The emphasis our law places upon an easement's express terms serves important public policies by promoting certainty in land transactions. In order to evaluate the burdens placed upon real property, a potential purchaser must be able to safely rely upon granting language. Marcus Cable, 90 S.W.3d at 702. Similarly, those who grant easements should be assured that their conveyances will not be construed to undermine private-property rights–like the rights to "exclude others" or to "obtain a profit"–any more than what was intended in the grant. Id. (quoting Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 436, 73 L.Ed.2d 868, 102 S.Ct. 3164 (1982)). The common law does, however, allow some flexibility in determining an easement holder's rights; the manner, frequency, and intensity of an easement's use may change over time to accommodate technological development. Id. at 701. But such changes must fall within the purposes for which the easement was originally created, as determined by the grant's terms. See id.

8

solely on the written instrument"). When the terms of the grant are not specifically defined, we give them their plain, ordinary, and generally accepted meaning. Marcus Cable, 90 S.W.3d at 701. An easement's express terms, interpreted according to their generally accepted meaning, therefore delineate the purposes for which the easement holder may use the property. Id. Any use beyond the delineated purposes is an unauthorized presence regardless of whether the unauthorized use results in a noticeable burden to the servient estate.[4] Id. at 703 (citing McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App.—Beaumont 1934, writ ref'd)).

We may not construe the easement to grant the Greenwoods any rights beyond those conveyed to them. See id. at 701. A change in the nature of the dominant estate cannot alter the scope of the express easement as it was created. See Kearney & Son, 401 S.W.2d at 905 (observing that "where the parties to an instrument granting, reserving[,] or covenanting for an easement specifically state the uses or purposes for which it is created, the instrument is, of course, limited to such uses and cannot be enlarged by any change in the use or character of the dominant tenement").[5] Adhering

---

[4] So, although certainly important to Clanton in terms of the integrity and purpose of her acreage, we need not consider in our resolution of this issue the potential damage to her property that would follow from the Greenwoods' proposed reading of the scope of the easement. If the easement does not provide the Greenwoods this right then it is, regardless of the extent of any damage done to the servient estate, an unauthorized presence on the Clanton's land.

[5] Recognizing that the easement at issue has not been used in the manner in which they propose during the nearly fifty years of its existence, the Greenwoods seem to rely on a corollary of this rule: If the language of the easement clearly gives the grantee a right in excess of the one actually used, such right continues to exist notwithstanding the exercise of a lesser privilege. See Lower Colo. River Auth. v. Ashby, 530 S.W.2d 628, 632–33 (Tex.App.—Austin 1975, writ ref'd n.r.e.); see Johnson v. Sw. Pub. Serv.

to basic easement principles, we must decide not what is most convenient or profitable to the Greenwoods, but what purpose the contracting parties intended the easement to serve. See Marcus Cable, 90 S.W.3d at 702–03 (citing Dauenhauer v. Devine, 51 Tex. 480, 489–90 (1879)).

Analysis

We begin by looking to the "plain, ordinary, and generally accepted meaning" of the terms "[e]asement and right-of-way" as used in 1964 when Hicks and Mims conveyed to Weedon the easement at issue. We begin with the plain and ordinary meanings of the relevant terms from the dictionary. An "easement" is an "interest in land owned by another that entitles its holder to a specific limited use or enjoyment." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 392 (11th ed. 2003). A "right-of-way" is defined generally as "a legal right of passage over another person's ground." Id. at 1073.

Within the law, the "plain, ordinary, and generally accepted meaning[s]" of the terms are similar. An "easement" is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." BLACK'S LAW DICTIONARY 586 (9th ed. 2009). The term "right-of-way" has one of three meanings: (1) "[t]he right to pass through property owned by another;" (2) "[t]he right to build and operate a railway line or a highway on land belonging to another, or the land so used;"

Co., 688 S.W.2d 653, 655 (Tex.App.—Amarillo 1985, no writ) (recognizing that the law provides easement holder the right to use easement "to its fullest extent").

or (3) "[t]he strip of land subject to a nonowner's right to pass through." Id. at 1440. Consistent with the language used in 1964, the 2009 cash warranty deed by which the Greenwoods were conveyed the property and easement defined the easement as an "access easement," which is defined as "[a]n easement allowing one or more persons to travel across another's land to get to a nearby location, such as a road." Id. at 586.

Case law reflects that the plain and ordinary meaning of the term "easement and right-of-way" has become generally accepted. When asked to determine the scope of an express easement, the Austin court concluded that the use of the word "right-of-way" in conjunction with "easement" delineated the scope and purpose of the grant. Lakeside Launches, 750 S.W.2d at 871. The Austin court observed that "[r]ight-of-way, when used alone, can have more than one meaning: it may denote either a right of passage or the right-of-way strip of land itself." Id. (citing S. H. Oil & Royalty Co. v. Tex. & New Orleans R.R. Co., 295 S.W.2d 227, 230–31 (Tex.Civ.App.—Beaumont 1956, writ ref'd n.r.e.)). Therefore, the court concluded, the only reasonable reading of "easement and right-of-way" in the grant at issue was one in which the term "right-of-way" was used to mean "right-of-passage over and across all of the land lying between the 670-foot contour line and the waters of Lake Travis." Id. The Corpus Christi court arrived at a consistent conclusion:

> We conclude that the only reasonable reading of "easement and right-of-way" in this grant is one in which the term "right-of-way" is used to mean right-of-passage over and across all the land described in the instrument, without a conveyance of title from the Navigation District to the County.

Long Island Owner's Ass'n v. Davidson, 965 S.W.2d 674, 684 (Tex.App.—Corpus Christi 1998, pet. denied) (citing Lakeside Launches, 750 S.W.2d at 871). Although the

11

facts and issues in the cases before the Austin and Corpus Christi courts vary from those in the case at bar, both cases are instructive as to the general treatment and understanding of the term used in the instant case. In both cases, "easement and right-of-way" was understood to mean a right to pass over described land. Id.; Lakeside Launches, 750 S.W.2d at 871.

According to the 2009 cash warranty deed, which refers to the servitude as an "access easement" and specifically incorporates for all purposes field notes which also refer to the easement as an "access easement" and describes it as "[a]ll that certain 45 ft. strip of land to be used as an access road," the easement is clearly limited to an access road. Even if we were to limit our review to the 1964 language "[e]asement and right-of-way over" the servient estate, a description which the Greenwoods advance as broader in scope than the 2009 cash warranty deed,[6] our conclusion remains the same: based on the plain, ordinary, and generally accepted meaning of the terms used, the easement serving the Greenwoods' property and burdening the Clanton property is limited in scope to an easement for means of ingress and egress only. Installation of utility lines is not permitted by the terms of the grant of the easement; therefore, any use of the easement to do so is an unauthorized presence on Clanton's property. See Marcus Cable, 90 S.W.3d at 703.

Based on the express terms of the "[e]asement and right-of-way" as it was created in 1964 and through its conveyance to the Greenwoods in 2009, the trial court properly concluded that, as a matter of law, the easement at issue was limited in scope

---

[6] And for that reason, they negotiated the aforementioned transfer from Weedon of any interest that remained vested in him from the 1964 creation of the easement.

to a means of ingress and egress only and that, contrary to the Greenwoods' broader interpretation, the installation of utility lines on, under, above, or in the easement was outside the express purpose of the easement and therefore unauthorized. Simply because the Greenwoods have undertaken to develop the land into residential property does not mean the scope of the easement therefore adjusts to fit the changing nature of the dominant estate. See Kearney & Son, 401 S.W.2d at 904–05. We overrule the Greenwoods' first issue. Having determined that the trial court properly determined the scope of the easement, we turn to the issues concerning the width of the easement.

Widening and Improvement of the Existing Road

In their counterpetition, the Greenwoods sought declaratory relief that they were entitled to widen and improve the existing road to include the entire forty-five feet as provided in the express language of the easement. Clanton moved for no-evidence summary judgment on the basis that the Greenwoods "do not have any evidence that there is any reasonable reason they need to use the entire 45-foot easement for an access road."[7] The Greenwoods responded that they were entitled to the declaratory relief requested regarding the width issue "under the terms of the easement and under applicable Texas law." The trial court granted Clanton's no-evidence motion for summary judgment concluding that the Greenwoods were not so entitled.

---

[7] She also asserted a number of other elements of which she claimed the Greenwoods had no evidence: "(1) there is a [justiciable] controversy or anything more for the Court to declare in this regard; (2) that the declaration sought is anything other than an impermissible advisory opinion; (3) there is any reasonable need to use the entire 45-foot wide easement for an access road; (4) that the easement at issue grants more right than reasonably necessary for Defendants to use the easement for an access road." In response, the Greenwoods point out that there are several, and, we think, obvious "unresolved disputes" regarding the width of the easement and gating issues.

13

<u>Standard of review for no-evidence summary judgment</u>

A no-evidence summary judgment is essentially a pretrial directed verdict; thus, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict.  <u>King Ranch, Inc. v. Chapman</u>, 118 S.W.3d 742, 750–51 (Tex. 2003).  We review the evidence in a light most favorable to the nonmovant and disregard all evidence and inferences to the contrary.  <u>Id.</u> at 751. We will sustain a no-evidence point when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  <u>Id.</u>  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  <u>Id.</u> (quoting <u>Merrell Dow Pharms. v. Havner</u>, 953 S.W.2d 706, 711 (Tex. 1997)).  With that, our task in reviewing a no-evidence summary judgment is to determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented.  <u>Kimber v. Sideris</u>, 8 S.W.3d 672, 675–76 (Tex.App.—Amarillo 1999, no pet.)

On a no-evidence motion for summary judgment, the movant does not bear the burden of establishing each element of its own claim or defense because the burden is on the nonmovant to present enough evidence to be entitled to a trial.  <u>See</u> <u>Gen. Mills Rests., Inc. v. Tex. Wings, Inc.</u>, 12 S.W.3d 827, 832 (Tex.App.—Dallas 2000, no pet.). A no-evidence motion for judgment motion must specifically state the elements for

which there is no evidence. TEX. R. CIV. P. 166a(i). If the motion challenges the nonmovant's proof on a matter that is *not* an element of its case, the challenge is insufficient. See Mott v. Red's Safe & Lock Servs., Inc., 249 S.W.3d 90, 98 (Tex.App.— Houston [1st Dist.] 2007, no pet.); Culver v. Gulf Coast Window & Energy Prods., Inc., No. 01-11-00080-CV, 2012 Tex. App. LEXIS 415, at *22 (Tex.App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.).

Law on the breadth of the express easement: the Greenwoods' rights

The Greenwoods as the parties seeking an affirmative declaration that they are within their rights to widen and improve the road to forty-five feet had the burden to show that they were entitled to such relief. See Graff v. Whittle, 947 S.W.2d 629, 634–35 (Tex. App.—Texarkana 1997, writ denied) (determining in a declaratory judgment action, the defendants, who contended they had a right to use the road because it was a public road and because they had an easement in the road, asserted the affirmative of the controlling issue and had the burden of proof). Before we evaluate the evidence produced in this case, we first address what was needed. That is, we first must ascertain what the Greenwoods would have to prove in order to establish that the easement entitles them the right to use the entire forty-five feet.

In determining the breadth of the Greenwoods' easement, we remain mindful that their rights do not arise solely from necessity or convenience; rather, they arise from an express grant in a recorded instrument. See Williams v. Thompson, 256 S.W.2d 399, 403 (Tex. 1953). Consequently, their rights as the dominant estate are paramount, to the extent of the grant, to the rights of the servient estate. See id. Again, when

15

considering the terms of an express easement, we apply basic principles of contract construction. Marcus Cable, 90 S.W.3d at 700. And, the intent expressed in the grant by the contracting parties determines the scope of the easement. Id. at 700–01.

"[T]he owner of a way, whose limits are defined in the grant, has not only the right of free passage over the traveled part but also over such portions of the way as he thinks proper or necessary." Williams, 256 S.W.2d at 403 (citing Murray v. Dickson, 123 S.W. 179, 183 (Tex.Civ.App.—Dallas 1909, no writ)). In Williams, the court held that the holder of the dominant estate had the right to use the entire thirty feet described in the grant for a roadway because "it follows logically, in the absence of restrictive words in the grant, that the grantee can fit the entire width for use." Id. at 404 (quoting Rotch v. Livingston, 40 A. 426, 427 (Me. 1898)). As far as width is concerned, an easement holder's "right to make a road is as wide as his right to a road." Id. (quoting Rotch, 40 A. at 432); see Unger v. Landry, No. 01-03-01331-CV, 2005 Tex. App. LEXIS 91, at *6–11 (Tex.App.—Houston [1st Dist.] Jan. 6, 2005, pet. denied) (mem. op.) (applying Williams to determine as a matter of law that the holders of easement had right to full extent of the thirty-foot width as delineated by express terms of the easement).

Limitations on the Greenwoods' Rights

The Texas Supreme Court also explored the limitations on an easement holder's right to use the full width of an express easement. Williams, 256 S.W.2d at 403–05. The court specifically rejected the limitation proposed by the Supreme Court of Illinois. See id. at 404 (rejecting limitation expressed in Doan v. Allgood, 141 N.E. 779, 780 (Ill. 1923)). The Doan court held that the grantee of a private road easement may make

such grades, etc., as may be necessary to enable him to make use of the way in accordance with the grant, "provided in doing so he does not injure the servient estate." Doan, 141 N.E. at 780. The Williams court regarded "this last proviso as too broad to constitute a valid limitation on a private road easement owner" and did not approve it. Williams, 256 S.W.2d at 404. Further, if language in the Rotch case could be read "as an absolute non-injury limitation," it rejected that limitation as also too broad. Id. Instead, Williams expressly adhered to the "proper, practical[,] and workable limitation" in Lone Star Gas Co. v. Hutton, 58 S.W. 19, 21 (Tex. Comm'n App. 1930, holding approved). That is, if the easement holder exercises the rights conferred in the instrument without negligence, no damages are recoverable.[8] Id.

Analysis

Here, the express terms of the grant give the Greenwoods the unrestricted right to use the entire forty-five feet of a strip of land along the northeastern edge of the servient estate. No words in the grant specifically limit the Greenwoods' use to a specific roadway then in use or to that part of the easement which may be necessary or convenient. Cf. Williams, 256 S.W.2d at 400, 405 (finding no such limitation in deed language that allowed use of "the streets, alleys and roads running through said property . . . more carefully described as [metes and bounds]").

_____

[8] So, it would appear that the limits on the Greenwoods' exercise of their rights granted by the easement come in the form of a cause of action in negligence, not an issue before the trial court or before this Court at this time. We expressly decline to be read as making any comment or conclusion that would bear on any future action concerning any issue raised relating to allegations of negligent injury to land in connection with use of the easement at its fullest or widest extent.

On appeal, Clanton takes the position that "[a]n easement holder does not have *carte blanche* to use an easement to the fullest extent of his theoretical rights; he is required to make reasonable use of the easement." She relies on Lamar Cnty. Elec. Co-op Ass'n v. Bryant, 770 S.W.2d 921, 923 (Tex. App.—Texarkana 1989, no writ), to support her position. However, Lamar County Electric does not outline the burden that was placed on the Greenwoods as the parties seeking affirmative declaratory relief in connection with the scope of an express easement.[9] That is, unlike the easement at issue in Lamar County Electric, the easement at issue in the instant case is an express easement, the construction of which varies significantly from a prescriptive easement as do the respective rights and responsibilities of the parties involved. See id. at 922. Here, we deal with a creature far different than that addressed in Lamar County Electric; we need only look to the instrument creating the easement to determine the width of the easement. See Williams, 256 S.W.2d at 404. The Greenwoods' "right to make a road is as wide as [their] right to a road." Id. (quoting Rotch, 40 A. at 432).

Because the trial court's no-evidence summary judgment held the Greenwoods to a burden they did not bear under the law applicable to the circumstances at hand, that summary judgment was improper. See Mott, 249 S.W.3d at 98. In other words, it is of no moment whether the Greenwoods were able to muster a scintilla of evidence regarding the "reasonable necessity," "reasonable discretion," or "reasonable reason,"

---

[9] Likewise, the case on which Lamar County Electric relies is distinguishable from the instant case. See Simpson v. Phillips Pipe Line Co., 603 S.W.2d 307, (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). In Simpson, the instrument granting the easement at issue, while obviously express in nature, did not specifically outline the width of the easement. See id. at 309.

all limitations Clanton has attempted to apply to the Greenwoods' choice to use the easement to the full extent of their rights; the applicable law does not call upon them to do so. As holders of an express easement granting them a forty-five-foot-wide easement, they need only bring evidence of the easement and its terms. They did.

Proper construction of the express terms of the easement does not allow for an indefinite description of the width of the easement, nor can the terms be read to give the servient estate owner any right to determine when or whether the easement holder may exercise his rights to the fullest extent expressly granted. No terms specifically limit the Greenwoods' rights with respect to the forty-five feet included in the easement. The Greenwoods hold the right to a forty-five-foot-wide easement over defined property and, on these facts, "there can be no controversy over what land is included and really conveyed." See S. Pine Lumber Co. v. Hart, 340 S.W.2d 775, 780 (Tex. 1960). Because the easement here can be given a definite meaning, we construe it to encompass the boundaries set forth in the unambiguous terms of the instrument creating the easement and further specified in the metes and bounds description provided in the 2009 cash warranty deed by which the Greenwoods acquired their property and the easement. See Marcus Cable, 90 S.W.3d at 703. The Greenwoods hold the right to an easement forty-five feet in width. Though these rights are in excess of the ones that have been used, such rights still exist notwithstanding the prior exercise of a lesser privilege. See Lower Colo. River Auth., 530 S.W.2d at 632–33.

So, based on the longstanding rule outlined in Williams, the Greenwoods are permitted to use the easement to the full extent of the express terms of the instrument

19

by which it was created.  Accordingly, we sustain the Greenwoods' second point of error, reverse the trial court's no-evidence summary judgment which limits the Greenwoods' right to use only twenty feet of the easement, and remand the matter to the trial court for further proceedings related to the Greenwoods' action seeking affirmative declaratory relief.[10]

## Gate Issue

In the Greenwoods' final issue on appeal, we are asked to return to the issue concerning the scope of the easement.  That is to say, we must decide another matter relating to what can and cannot be done with respect to the use of the easement at issue.  Here, the issue is whether Clanton is permitted to use a locking gate along the easement.  The Greenwoods contend that she cannot, that they are entitled to unobstructed access along the easement.  Clanton maintains that she can so long as the Greenwoods are given access through those gates and may still use the easement

---

[10] No one contends that the language used in 1964–"45 feet in width"–is ambiguous; rather, it seems, they disagree over its implementation.  When, after applying established rules of contract construction, an easement is open to only a single, reasonable and definite interpretation, we must construe it as a matter of law even though the parties offer different interpretations of the easement's terms.  See Marcus Cable, 90 S.W.3d at 703.  However, because the trial court could not have granted judgment as a matter of law on this issue when there was before it no motion urging it to do so, we are similarly limited in the remedy we may give.  See TEX. R. APP. P. 43.2(c) (permitting the court of appeals to render the judgment the trial court should have).  With that, we will reverse the trial court's judgment granting Clanton's no-evidence motion for summary judgment to the degree it limits the Greenwoods' rights to use the easement to any width less than the full forty-five feet provided for in the express terms of the easement.  We are, however, constrained to remand the matter to the trial court for appropriate resolution and disposition of the Greenwoods' request for declaratory relief on this particular issue.

for access to and from Steep Hollow Road. The trial court rendered a very specific judgment on the matter, permitting two gates with very specific instructions:

> 3. The Easement allows the installation of a gate at the entrance to Plaintiff's property (the "Clanton Gate"). The Clanton Gate shall be aligned with the road so as to open onto the road, allowing vehicular ingress and egress so that vehicles need not leave the road to pass through the gate. The Clanton Gate, when opened, shall provide an opening of not less than 16 feet. At the discretion of Plaintiff, the Clanton Gate may be locked. The owners of the Greenwood property shall at all times be provided with a key or combination as applicable to allow access through the Clanton Gate. The key or combination shall not be changed by Plaintiff more often than annually, absent extraordinary circumstances. The owners of the Greenwood Property or the Clanton property may, at their respective sole expense, install a double-locking device on the Clanton Gate, which allows access by either party with such party's own key or combination. The parties shall reasonably cooperate so that the locking, opening, and closing of the Clanton Gate shall be conducted by each party so as to not unreasonably disturb Plaintiff's use of her property or use of the 45-Foot Easement Strip by the owners of the Greenwood Property.

> 4. The owners of the Greenwood Property shall follow the "cowboy rule" of etiquette for the condition of the Clanton Gate, i.e., leave the gate in the same condition it was found; if it was open when encountered, then pass through and leave it open, and if it was closed, then open and pass through and close it.

> 5. The Greenwood Gate, which shall be within the sole control of the owners of the Greenwood property, shall be of such design and type as the owners of the Greenwood Property elect in their sole discretion, and Plaintiff shall not be entitled to any key, combination, or other access through the Greenwood Gate. If the Greenwood Gate is left continuously or habitually open, removed, or is otherwise inadequate to keep Plaintiff's property and livestock safe or secure or from escaping onto the Greenwood Property, Plaintiff may install and have sole control over a gate to be located on Plaintiff's property at the entrance to the Greenwood Property; provided that the owners of the Greenwood Property shall be provided with a key or combination to allow free and continuous access through the gate to be installed by Plaintiff.

In support of her alternative request for summary judgment, Clanton presented evidence that her property had been used as a ranch for livestock since at least 1981, that it continues to be used for ranching purposes, and that, since 1981, a gate has stood on the easement at the entrance to her property. She also presented evidence that she uses her land to tend horses, burros, goats, chickens, and other livestock. In her no-evidence motion for summary judgment, she contended that the Greenwoods could not produce evidence that they are entitled, by specific terms of the easement or by any other document or fact, to use the easement free of gates or other obstructions.

The express terms of the easement do not address the matter of gates. To show that they were entitled to passage over the easement unobstructed by gates when the easement's terms do not address the issue, the Greenwoods were called on to show that their claim to gate-free passage over the easement is reasonably necessary and convenient and that their claimed right places the lightest possible burden on Clanton's property. See Reaves v. Lindsay, 326 S.W.3d 276, 282 (Tex.App.—Houston [1st Dist.] 2010, no pet.). We engage in this balancing test, guided by the following considerations: "the terms of the grant, its purpose, the nature and situation of the property, and the manner in which it is used" unless the easement's language provides direction otherwise. Gerstner v. Wilhelm, 584 S.W.2d 955, 958 (Tex.App.—Austin 1979, writ dism'd) (concluding that trial court did not abuse its discretion by requiring servient estate to remove gates from easement providing access to otherwise

landlocked property and quoting <u>Arden v. Boone</u>, 221 S.W. 265, 266 (Tex. Comm'n App. 1920, judgm't approved)).

Again, the express terms of the easement remain silent on the issue of gates. We note that the easement was created to provide access to the landlocked forty-acre tract belonging to the Greenwoods. They are developing their land for residential purposes, and Clanton uses her land for residential and ranching purposes. Considering the nature of the properties at issue, gate-free passage does not appear reasonably necessary or convenient.

The Greenwoods presented evidence that (1) there was not a closed or locked gate at the time they inspected the property near the time of their purchase, (2) the gate was often left open, (3) for the nearly forty-five-year period when Briggs, their immediate predecessor in interest, owned–but did not reside on–the property, only on a few occasions was the gate locked such that he could not pass through the gate, and (4) during their ownership of the property, the Greenwoods have encountered the gate both opened and closed.[11] From this evidence, we can ascertain that a gate has been present for decades but was not always locked. <u>Cf.</u> <u>McDaniel v. Calvert</u>, 875 S.W.2d 482, 483, 485 (Tex.App.—Fort Worth 1994, no writ) (noting among other factors that, for decades, gates had not existed on easement in question). We also learn that the nature of the Greenwood property is to be changed dramatically from what sounds to be range or ranch land to residential use. The Greenwoods' evidence that a locked gate was rarely used in the past does not establish that access over the easement without

_____

[11] In her affidavit, Clanton maintained that she most often keeps the gate closed but occasionally leaves it open.

gates is, at this point in time, reasonably necessary or convenient and the least burden on the Clanton property.

In fact, the Greenwoods' own evidence in response to Clanton's no-evidence motion for summary judgment indicates they are amenable to a closed, locked gate so long as they are given access to the gate without having to leave their vehicles, suggesting that gate-free access is not reasonably necessary. From Kyle Greenwood's affidavit in response to Clanton's no-evidence motion for summary judgment, it appears that the Greenwoods want *easier* access and would accept a locked gate so long as they need not get out of their vehicle in order to gain entrance through it:

> My wife and I do not believe it is reasonable for Martha Clanton to block access to the 45-foot wide easement with a chained and locked gate at the entrance to her 10-acre tract. This requires getting in and out of a vehicle, regardless of the weather, to use the easement and right-of-way. There was no such chained and locked gate across the easement entrance to the Clanton property when we purchased our 40-acre tract. We would have no objection if she installed an electric gate at the entrance to her 10-acre tract that could be opened with a remote control device or by use of a mounted keypad that could be accessed from a vehicle window.

So, the Greenwoods' position, more precisely worded, may be that they are entitled to access over the easement without having to get out of the car to pass through a gate.[12]

Considering the purpose of the easement, the Greenwoods should have continuous access to their tract of land. Considering the nature and situation of the land, gates are reasonable; the Greenwoods presented no evidence that their passage

---

[12] "[W]e tend to think that it is necessary for us to do everything from our automobiles. I maintain, however, that it is not unreasonable to exit from an automobile and open a gate." See Ferrara, 318 S.W.3d at 500 n.11 (Moseley, J., concurring in part and dissenting in part).

free of gates is reasonably necessary or convenient to the Greenwoods' use of the easement. So long as the Greenwoods are provided complete and continuous access through the gate at the boundary of the Clanton tract, the purpose of the easement is served and the needs of the respective parcels of land are served. The Greenwoods have failed to present evidence that they are entitled to pass along the easement without gates. The trial court properly granted no-evidence summary judgment on this issue.[13] We overrule the Greenwoods' final point of error.

## Conclusion

We reverse the trial court's judgment that limits the Greenwoods' rights in connection with the easement to a road not to exceed twenty feet in width. We remand to the trial court the matters concerning only the Greenwoods' request for declaratory relief that they are entitled to use the entire forty-five-foot width of the easement. We affirm the trial court's judgment in all other respects.

Mackey K. Hancock
Justice

Pirtle, J., concurring and dissenting.

---

[13] As for the details of the trial court's judgment concerning the specification and operation of the gates to be used, the Greenwoods have not specifically challenged the judgment on those terms. We limit our review solely to the trial court's conclusion that the easement permitted installation of gates and its logical corollary that the Greenwoods were not entitled to passage over the easement free of any gates.

25