**Reverse and Render in part and Affirm in part and Opinion Filed December 12, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00800-CV**

**MQ PROSPER NORTH, LLC AND DONALD SILVERMAN, Appellants**
**V.**
**LISA COULTER, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-03077-2018**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Molberg

Appellants MQ Prosper North, LLC and Donald Silverman appeal the trial court's judgment for appellee Lisa Coulter. Appellants raise seven issues: whether the trial court erred by (1) issuing a declaratory judgment for Coulter; (2) overruling MQ's objections to Coulter's motion for attorney's fees and costs and ruling for Coulter on her claim for declaratory judgment; (3) overruling MQ's objections to Coulter's motion for attorney's fees and costs for defending against MQ's claim for declaratory judgment; (4) granting judgment for Coulter on her breach of easement claim; (5) granting judgment for Coulter for her trespass claim; (6) granting

judgment for Coulter on her intentional infliction of emotional distress claim; (7) granting judgment for Coulter on her assault claim; (8) denying MQ's request to amend the permanent injunction to allow MQ to install a gate across the easement; and (9) denying MQ's request to amend the permanent injunction to allow MQ to regrade the easement on its property. We sustain appellants' fourth issue in part but otherwise affirm the judgment below in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I.    Background

MQ alleged in its ninth amended petition that it owned about twelve acres of land on Preston Road in Prosper, Texas that used to be part of a larger tract. Coulter owned and lived on two acres adjacent to the MQ property, but her property did not have access to Preston Road. Instead, Coulter used a driveway that crossed MQ's property to enter and exit her property. The Coulter property also had an express easement across the southern part of the MQ property. The driveway, which Coulter had used with the permission of the prior owner of the MQ tract, was not on the express easement.

MQ alleged that in October of 2017, it told Coulter she would no longer be allowed to use the driveway as it was being removed as part of MQ redeveloping its property. MQ asked Coulter to use the easement instead. MQ alleged that Coulter "refused and continued to use the old driveway," so on October 27, 2017, MQ's representative, Donald Silverman, delivered Coulter a notice of trespass. MQ

–2–

alleged it learned in June of 2018 that Coulter continued to use the driveway and had obtained a permit from the Town of Prosper to construct a paved driveway partially but not entirely in the location of the easement. MQ alleged it informed Coulter her proposed driveway was partially on MQ's property. MQ hired a surveyor who confirmed Coulter "had begun building outside the easement and [was] storing construction supplies on MQ's property." Coulter "assured MQ that she . . . would build within the easement." But after a few months, MQ's surveyor returned to the property and confirmed that Coulter's new driveway was outside the easement.

MQ also alleged Coulter's contractor, Summit Paving, LLC, interfered with fencing on the MQ property while constructing Coulter's driveway and left "earth and rock" on the MQ property. Additionally, MQ stated Coulter and Summit left a gap between the driveway and street it joined, which caused water diversion and "drainage conditions" on the MQ property.

MQ alleged that on February 28, 2019, Coulter and Summit entered MQ's property to demolish the driveway they had built and "sprayed concrete on the nearby retaining wall" and left tire marks on the property. MQ instructed Coulter and Summit to cease trespassing, but MQ alleged they refused and continued to trespass. MQ alleged Coulter and Summit removed dirt and other debris and then dumped it in a drainage ditch at the end of the easement, which damaged MQ's erosion control fence and contaminated "the site that MQ ha[d] recently graded and

–3–

compacted . . . ." MQ alleged Coulter "altered the grade" of its property and failed to maintain the easement, allowing weeds and grass to grow.

Additionally, MQ alleged Coulter had no recorded utility easement permitting her to run water or communication utilities over MQ's property. Despite this, MQ alleged, Coulter "had water and communications utilities servicing her home that ran across MQ's property without any easement rights . . . ." MQ alleged Coulter bought her property knowing—through a special warranty deed—the property did not have utility easements. In March 2019, MQ alleged Coulter began running new communications utility lines along the access easement without any authority to do so. MQ also alleged Coulter's septic system was partly on MQ's property and drained onto MQ's property, and that Coulter ran electricity across MQ's property without authority.

Based on the above, MQ brought claims for breach of easement, trespass, and declaratory judgment regarding the easement, and sought injunctive relief "to prevent Coulter and Summit from accessing or altering the MQ Property in contravention of MQ's rights and from using the Easement in contravention of the express terms thereof." MQ alleged Coulter's and Summit's conduct caused over $1 million in damages.

Coulter generally denied the claims in MQ's petition and asserted numerous affirmative defenses. Coulter filed her third amended counterclaim and request for injunction on August 9, 2019. She alleged the prior owner of the MQ property

–4–

allowed Coulter to utilize the existing driveway and "also instructed Ms. Coulter to make improvements to the ingress and egress easement leading" to the property. Coulter alleged MQ was aware she used the driveway and allowed her to do so until a year after MQ bought the property, when Silverman blocked Coulter from accessing her house with his car. Coulter alleged Silverman then approached her truck "and began using obscenities and demanding that she use the unimproved easement" instead of the driveway to access her house, and "then threw an envelope at Ms. Coulter that hit her in the face." Coulter called the police and explained to them she feared for her and her daughter's safety.

Coulter alleged the easement was blocked and MQ had placed piles of rocks on the easement preventing her from using it. Thus, she "began the process of making the easement passable." She had the easement staked and applied for a permit from Prosper "to pave a twelve-foot driveway within the thirty-foot easement." Prosper issued Coulter a permit on June 19, 2018, and she hired Summit to pave the driveway. Coulter alleged MQ served Summit with a trespass notice "when [Summit] was preparing to pave the easement" and then filed its lawsuit and obtained a temporary restraining order prohibiting Coulter from using the existing driveway and from paving the easement. Coulter was allowed to use the driveway temporarily under a Rule 11 agreement, which the parties agreed to extend at the July 5, 2018 temporary injunction hearing. Afterwards, Coulter alleged MQ erected metal poles on the easement, blocking her access to it.

–5–

In response, Coulter alleged she filed a counterclaim and emergency request for a temporary restraining order to require MQ to remove the poles and to prevent MQ from impeding Coulter's access to the easement and to prevent it from interfering with Coulter's use of the existing driveway until the poles were removed. The trial court entered the temporary restraining order and later entered a temporary injunction stating Coulter was allowed to utilize and pave the easement. Coulter alleged she then began again to pave the driveway. She employed Rhodes Surveying to mark the easement, but "unbeknownst to [Coulter], Rhodes incorrectly surveyed and staked the easement." Thus, Coulter conceded, a portion of the driveway was paved outside of the easement. Coulter also alleged MQ engaged a survey company that trespassed onto Coulter's property, "at the direction of MQ," and Silverman harassed Coulter's paving company, making derogatory comments and walking on freshly poured concrete.

Coulter hired a second survey company, Sparr Surveys, which determined that the MQ survey was accurate and that a portion of the driveway was thus outside the easement. To finally resolve the issue, Coulter requested MQ's survey company to stake the easement so she could move the portion of the driveway outside the easement inside the easement. MQ refused to allow its survey company to stake the easement, even at Coulter's expense.

Coulter also alleged that MQ harassed her in other ways. She stated she provided MQ with a CoServ/Denton County Electric Cooperative easement giving

CoServ the right to place and maintain electric transmission and distribution lines over 160 acres, including the Coulter and MQ properties. Coulter alleged MQ's surveyor confirmed to MQ that CoServ held such an easement. Despite this, Coulter alleged MQ claimed the electric lines serving the Coulter house were trespassing on MQ's property. MQ also told Coulter it planned to cut all utility lines to the Coulter residence. MQ cut Coulter's internet line on December 19, 2018, and it cut her water line on December 20, 2018.

Coulter alleged that, additionally, MQ representatives "continuously trespassed on [Coulter's] property and removed her personal property such as fence panels and t-poles." After Coulter obtained a court order allowing her to pave the easement, MQ blocked portions of the easement by installing erosion fencing and placing a portable toilet within the easement. MQ refused to fully clear the easement. Coulter alleged that MQ's and Silverman's actions caused her chest pain, anxiety, stress, crying spells, and difficulty sleeping.

Coulter alleged claims against MQ for breach of easement, declaratory judgment relating to the utility lines servicing her house, private nuisance, intentional infliction of emotional distress, and trespass, and against Silverman for intentional infliction of emotional distress and assault. Coulter requested an injunction to prevent MQ from interfering with her ability to fully utilize the easement and from interfering with her utility rights. MQ and Silverman each generally denied Coulter's claims and asserted several affirmative defenses.

A non-jury trial was held in October 2019; we discuss pertinent parts of the trial record below in our discussion of appellants' issues. After trial, the trial court ordered that MQ take nothing on its claims. The trial court ordered that Coulter recover from MQ $6,700 on her breach of easement claim; $1,950 on her trespass claim; $450,000 in attorney's fees for "defending against MQ's declaratory judgment claim and prosecuting Coulter's declaratory judgment claim"; conditional appellate fees; and costs and post-judgment interest. The court ordered that Coulter recover from Silverman "[a]ctual mental anguish damages in the amount of $5,000 on Coulter's intentional infliction of emotional distress and assault by physical conduct claims." Coulter prevailed on her request for declaratory relief: the trial court declared that CoServ's easement provided it the right to provide electrical utilities to Coulter's property and that Coulter was not trespassing on the MQ property by accepting electricity services provided by CoServ.

## II. Discussion

### A. Declaratory judgment

Appellants argue in their first issue that Coulter's request for a declaratory judgment should have been denied because it was a restatement of issues already before the court through MQ's trespass claim. When a declaratory judgment is entered after a bench trial, we review the trial court's factual findings and conclusions of law de novo. *Trinity Drywall v. Toka Gen. Contrs.*, 416 S.W.3d 201, 207 (Tex. App.—El Paso 2013, pet. denied). A declaratory judgment is a remedial

–8–

action meant to determine parties' rights; it affords relief from uncertainty regarding rights, status, and other legal relations. TEX. CIV. PRAC. & REM. CODE § 37.002. "A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for." *Id*. § 37.003(a). "A declaratory judgment is not available to settle legal disputes already pending before the court." *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App.—Dallas 2009, pet. denied). This rule applies when the plaintiff's cause of action is "mature and enforceable in a pending suit that involves the same parties and the same issues as alleged in the declaratory judgment action." *Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex. App.—Eastland 1994, no writ).

For instance, in *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591 (Tex. App.—Dallas 1988, writ denied), a declaratory judgment counterclaim was not available to the defendant when the plaintiff sued for failure to pay for a car bought by the defendant's purported agent. The defendant "brought a counterclaim in which it prayed for a declaratory judgment as to any agency relationships, thus determining the rights of the parties." *Id*. at 594. But, the Court concluded, that question "was already before the trial court under [the plaintiff's] action for relief under the sales contract[,]" which relied on an agency relationship. *Id*. "[T]he harm sued upon was a one time occurrence that is fully covered by [the plaintiff's] original

suit." *Id*. at 595. The defendant was therefore not entitled to relief under the declaratory judgment act. *Id*. at 594.

However, a defensive declaratory judgment may present issues beyond those raised by the plaintiff. *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990). In *Placid Oil Co. v. Louisiana Gas Intrastate, Inc.*, the plaintiff sued the defendant for breach of a gas sales contract, alleging underpayment. 734 S.W.2d 1, 2 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). The defendant counterclaimed, seeking declaratory judgment "declaring its rights, status, and legal relations under the gas purchase contract with [the plaintiff]." *Id*. at 5. The court concluded the trial court did not abuse its discretion in awarding attorney's fees to the defendant for its declaratory judgment claim. *Id*. at 5–6. We later described this issue in *Placid Oil Co.* as follows:

> [T]he Declaratory Judgment counterclaim in [*Placid Oil Co.*] had greater ramifications than the original suit. [The plaintiff] originated the suit for underpayment of gas royalties by [the defendant]. However, *the contract being sued upon was an ongoing and continuing relationship*. The original suit only requested relief for alleged underpayments that had accrued in the past. [The defendant] counterclaimed for a contract interpretation that would settle all future disbursements of royalties. Because this further remedy was sought in the counterclaim, an award of attorney fees was properly authorized in that case.

*John Chezik Buick Co.*, 749 S.W.2d at 595 (emphasis added).

Here, MQ first raised the question of a utility easement in its second amended petition, filed December 18, 2018, when it alleged Coulter had no utility easements over MQ's property and Coulter's utilities were therefore trespassing on MQ's

–10–

property. MQ asserted that "by running [Coulter's] utilities . . . on the MQ property, [Coulter] has trespassed and continues to trespass on the MQ property." Meanwhile, Coulter sought a declaratory judgment for the first time in her Second Amended Counterclaim, filed February 22, 2019, in which she requested a declaration that a 1946 right-of-way easement provided CoServ the right to provide electrical utilities to the Coulter property and that Coulter was therefore not trespassing on MQ's property by accepting electrical services from lines running on or underneath the MQ property.

We conclude that Coulter's declaratory judgment claim was "more than a mere denial" of MQ's trespass claim. *See BHP Petroleum Co.*, 800 S.W.2d at 842. First, MQ alleged Coulter herself had no utility easements on the MQ property, but Coulter sought a declaration relating to CoServ's easement. She thus presented an issue that went beyond that raised by MQ. Second, and relatedly, Coulter alleged MQ was threatening to cut the electrical line, and she sued for a declaration that would settle the question of whether MQ could legally do so; this was a separate, if related, matter from the trespass alleged by MQ. Coulter's requested declaration related to an "ongoing and continuing relationship." *See John Chezik Buick Co.*, 749 S.W.2d at 595. We overrule MQ's first issue.

MQ argues in its second issue that the trial court erred by overruling its objections and awarding attorney's fees to Coulter for prosecuting her declaratory

–11–

judgment claim because it merely repleaded her defense to MQ's trespass claim. Because we rejected this argument above, we similarly overrule MQ's second issue.

## B. Attorney's fees

The trial court awarded Coulter "[r]easonable and necessary attorney's fees in the amount of $450,000 for defending against MQ's declaratory judgment claim and prosecuting Coulter's declaratory judgment claim." In their third issue, appellants argue the trial court erred by awarding Coulter attorney's fees for defending against MQ's declaratory judgment action. Appellants argue specifically that MQ's request for declaratory relief was denied solely because Coulter did not dispute the validity of the requested declarations relating to the easement. Under such circumstances, appellants argue, the fees awarded by the trial court were unreasonable insofar as they were based not just on Coulter's prosecution of her declaratory judgment claim but also her defense against MQ's request for declaratory relief.

In any proceeding under chapter 37, the court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE § 37.009. "The Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). In reviewing a fee award under the act, we determine whether the trial court abused its discretion by awarding fees if there

–12–

was insufficient evidence the fees were reasonable and necessary, or if the award was inequitable or unjust. *Id*.

On February 21, 2020, Coulter's counsel filed a motion for an award of attorney's fees. Counsel described incurring $635,653 in attorney's fees, $376,075.42 of which was due to the two declaratory judgment claims. Coulter requested an upward adjustment, in light of the "results obtained and billing discretion exercised," and asked for $450,000 in total.

MQ, in its original petition, requested declarations that Coulter's easement was in the location asserted by MQ, Coulter had no right to access any other part of the MQ property, and Coulter had no right to alter the MQ property in any way. Coulter "was therefore forced to defend against MQ's claim" to determine the location of the easement and prove she had the right to alter the easement on MQ's property. Furthermore, Coulter argued in her motion, and now argues on appeal, that MQ revised its claim for declaratory judgment several times, requiring her to defend against MQ's claims.

The record reflects that MQ's declaratory judgment claims developed and changed throughout the lawsuit. In its original petition, MQ sought a declaration that the easement's position was as depicted in an attached exhibit. In its first amended petition, MQ again sought such a declaration, but its attached exhibit was not the same map from the original petition and appeared to list different coordinates for the easement's position. In its third petition, MQ requested for the first time a

–13–

declaration that the easement did not create for Coulter any utility easements permitting her to run utilities on the MQ property. MQ in its fifth petition sought a declaration that Coulter's easement did not give her or Summit the right to dump or store debris or other items on the easement. In its seventh petition, MQ included for the first time requests for declarations that the CoServ easement did not permit Coulter to run electric lines across the MQ property and Coulter's septic system and grey water field was on MQ's property and the easement did not provide Coulter the right to maintain her septic system on the MQ property. The month prior to trial, MQ filed its ninth amended petition, which removed the previously requested declarations that Coulter did not have the right to dump debris on the easement; the CoServ easement did not permit Coulter to run electricity services across the MQ property; and Coulter's septic system and grey water field were on MQ's property. Despite this, Coulter argued in her motion that she "had to defend against these requested declarations and obtain discovery regarding them" before they were withdrawn by MQ.

Coulter argued in her motion that, after the "various additions, withdrawals, and revisions to its declaratory judgment claim," MQ's live petition "asserted declarations that [Coulter] did not dispute." As a result, the trial court dismissed MQ's declaratory judgment claim for lack of subject matter jurisdiction.

We cannot agree with appellants that, because Coulter did not dispute their claim for declaratory relief in its final form, the trial court erred by awarding her

–14–

attorney's fees based, in part, on defending appellant's declaratory judgment claim. As described above, appellants' claims for declaratory relief presented an ever-moving target. We conclude the trial court could have reasonably determined, in its "sound discretion," that attorney's fees for Coulter for both prosecuting her declaratory judgment claim and also for defending against MQ's claims were reasonable, necessary, equitable, and just. *Bocquet*, 972 S.W.2d at 21. Appellants' third issue is overruled.

### C. Breach of easement

In their fourth issue, appellants argue the trial court erred by finding for Coulter on her breach of easement claim because insufficient evidence supported finding MQ breached the easement or that Coulter was damaged as a result. The trial court found MQ breached the easement by piling rocks on the easement, blocking Coulter's access to the easement by installing poles, barricades, and fencing, and installing a portable toilet and fences in and across the easement. The court found Coulter suffered $6,700 in damages as a result: $4,700 to move the rocks and $2,000 resulting from delays to paving the easement.

When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party did not have the burden of proof, the party must show that no evidence supports the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We determine whether the evidence would enable reasonable and fair-minded people to reach the

–15–

verdict under review. *Id.* We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* We will find evidence legally insufficient only when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

In a factual sufficiency review of the evidence, "we consider and weigh all of the evidence, setting aside the judgment only if it is so contrary to the overwhelming weight of the evidence" that it is clearly wrong and unjust. *Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.—Dallas 2020, pet. denied) (citing *City of Keller*, 168 S.W.3d at 826). Because the fact finder is the sole judge of the witnesses' credibility, we may not impose our own opinion regarding credibility if the fact finder believed one witness over another. *Id.* It is within the fact finder's province to resolve conflicts in the evidence, and we therefore assume the fact finder resolved any evidentiary conflicts in accordance with its findings if a reasonable fact finder could have done so. *Id.*

We use principles of contract construction and interpretation when considering the terms of an express easement. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). To prove a claim for breach of contract, a plaintiff

must establish (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff suffered damages due to the breach. *Target Corp. v. D&H Props., LLC*, 637 S.W.3d 816, 840 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

Coulter presented evidence her property had a "roadway easement" for ingress, egress, and regress in, upon, and across the MQ property. Glynn Stringer worked for Precise Commercial Builders, which was hired by MQ to work on its property. He testified in his deposition that Precise erected barricades on the easement. He testified at trial that a pile of rocks was in the easement and that Precise put them there, and that the poles depicted in Defendant's Exhibit 89 were poles at the entrance to the easement, placed there by Precise. He further testified that MQ's silt fence was located within the Coulter easement and it had been up for a month or two; he said another silt fence was located on another part of the easement, as well as a porta-potty, and they had been on the easement for at least two months. Coulter testified Summit charged her an extra $4,700 to move the pile of rocks before Summit could pave the easement.

Coulter also testified Summit charged her $2,000 for delay when MQ obtained a temporary restraining order preventing her from paving the easement. MQ sought the temporary restraining order because Coulter "refuse[d] to stop accessing the MQ property and ha[d] obtained a building permit to make permanent improvements on the MQ property and altered the grade and course of the MQ property" without MQ's

–17–

consent or any legal right to do so. MQ requested Coulter be restrained from, among other things, "continuing to pave the easement." On June 26, 2018, the trial court entered an order restraining Coulter and her agents from, among other things, "continuing to pave the easement."

We conclude sufficient evidence supported the trial court's finding that MQ breached the easement agreement by piling rocks and erecting other barriers on the easement, which prevented Coulter from using the easement for ingress and egress.

However, appellants argue the $2,000 delay damages would be recoverable only if the restraining order had been wrongfully issued, which, they argue, Coulter cannot show because she admits the driveway was paved partially outside the easement. But, as detailed above, the temporary restraining order was not sought or issued to prevent Coulter from paving outside the easement; instead, MQ prevented Coulter from paving the easement altogether.[1] Yet appellants also argue in their reply brief that the contractor was required to cease paving because the trial court ordered it—not because MQ demanded it. Thus, they argue, Coulter should have alleged wrongful injunction and cannot recover for breach of contract premised on a temporary restraining order. Appellants cite *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) (op. on reh'g). In that case, the supreme court explained that a "person who obtains an injunction wrongfully is liable for damages caused by

---

[1] "[T]he grantee of an easement may prepare the way for proper use and hence may grade, gravel, plow or pave the same." *Thompson v. Williams*, 249 S.W.2d 238, 240 (Tex. Civ. App.—Fort Worth 1952), *aff'd*, 256 S.W.2d 399 (1953).

–18–

issuance of the injunction." *Id*. at 685. "There are two separate causes of action for wrongful injunction, one upon the bond ordinarily filed to obtain the injunction, and the other for malicious prosecution." *Id*. To prevail in the former, "the claimant must prove that the temporary restraining order or temporary injunction was issued or perpetuated when it should not have been, and that it was later dissolved." *Id*. at 685–86. The damages recoverable are limited to the amount of the bond. *Id*. at 686.

"The only other cause of action for wrongful injunction is for malicious prosecution." *Id*. To prevail on this claim, "the claimant must prove that the injunction suit was prosecuted maliciously and without probable cause, and was terminated in his favor." *Id*. All actual damages may be recovered. *Id*. "[N]o action will lie by the defendant" for a wrongful injunction, "independently of a bond or undertaking," in the absence of the elements of malicious prosecution. *Id*.

We conclude Coulter's evidence of breach of contract as to the delay damages is legally insufficient. The trial court's temporary restraining order cannot be MQ's breach. And to the extent Coulter argues the order was wrongful, she did not allege either of two possible actions for wrongful injunction, nor prove the elements of malicious prosecution. *See DeSantis*, 793 S.W.2d at 685–86. Accordingly, we sustain in part appellants' fourth issue and reverse the trial court's award of $2,000 delay damages.

**D. Trespass**

In their fifth issue, appellants argue the evidence was legally and factually insufficient to support a finding that MQ committed an act of trespass or that Coulter suffered damages as a result. The trial court found that after MQ purchased its property, MQ's agents entered the Coulter property and removed fence panels and T-posts belonging to Coulter. The court concluded that MQ's agents' entry on the Coulter property was intentional, voluntary, unauthorized, and it caused $1,950 in damages—the value of the removed panels and posts.

"Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (per curiam). To recover damages for such a trespass, a claimant must prove (1) she owns or has a lawful right to possess real property, (2) the trespasser entered the claimant's land and the entry was physical, intentional, and voluntary, and (3) the trespass caused injury to the claimant. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).

Appellants argue that Coulter's claim and the trial court's finding depends on conjecture. Appellee responds that "[c]ircumstantial evidence may be used to prove one's case-in-chief or to defeat a motion for directed verdict." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). We agree.

Coulter testified she had fence panels and T-posts placed in the corners of her property to help mark her easement, and the panels all went missing. She testified there was a silt fence on her property put there by Silverman's workers, "so clearly they were on the property putting the silt fence across." Around that time, her fence panels went missing. Coulter stated at trial, "the panels were there when Mr. Silverman owned the [MQ] property and it was his workers that I saw on my property putting the silt fence in[.]" Coulter asked for her panels to be returned but never received a response. A photo of the panels was admitted at trial, and Coulter testified $1,600 of panels and $350 of T-posts were taken. Coulter stated she never authorized MQ or its contractors to be on her property.

Given this evidence, the trial court could have reasonably concluded, in light of other evidence demonstrating the contentious relationship between the parties, that MQ's agents entered Coulter's property and removed the fencing without Coulter's authorization. The circumstantial nature of Coulter's evidence supporting her claim does not render the evidence insufficient. *See Lipsky*, 460 S.W.3d at 589. Appellants' fifth issue is overruled.

### E. Intentional infliction of emotional distress and assault

In their sixth issue, appellants argue the evidence was factually and legally insufficient to support Coulter's claim for intentional infliction of emotional distress. Appellants argue no evidence supported a finding that Silverman's conduct was "extreme and outrageous."

A party claiming intentional infliction of emotional distress must prove (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the outrageous conduct caused the complainant emotional distress, and (4) the emotional distress suffered was severe. *Williams v. City of Dallas*, 53 S.W.3d 780, 788–89 (Tex. App.—Dallas 2001, no pet.). To be extreme and outrageous, a defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002). "Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not constitute extreme and outrageous conduct. *Id*. In determining whether conduct is extreme and outrageous, we consider the context and the relationship between the parties. *Toles v. Toles*, 45 S.W.3d 252, 261 (Tex. App.—Dallas 2001, pet. denied). Intentional infliction of emotional distress is most often a "continuing tort," so we look to a defendant's conduct throughout the parties' relationship. *Id*. at 262. We evaluate a defendant's conduct "as a whole" in determining whether it was extreme and outrageous. *Id*.

The trial court found that Silverman acted intentionally or recklessly when he blocked Coulter from accessing her home; confronted her using obscenities and

throwing a letter that struck Coulter in the face; stopped her from paving her easement, which he also demanded she use; interfered with contractors Coulter hired to pave the easement; threatened to cut and then cut her water and internet lines; and made disparaging remarks about Coulter to others. The trial court found that Silverman's conduct over two years "impeding Coulter's ability to access and enjoy her home was extreme and outrageous"; his pattern of harassing behavior caused Coulter to suffer severe emotional distress, which was so severe it caused her to avoid her home and move her daughter; and Coulter suffered chest pains, anxiety, crying spells, and difficulty sleeping as a result of Silverman's conduct. The court found that Coulter's symptoms satisfied the severe emotional distress element of her claim.

Considering evidence of Silverman's conduct "as a whole," the record before us supports the trial court's above findings. Coulter testified that, as she arrived home one day, she turned into the driveway and observed a car blocking the driveway. After waiting a minute, she gently honked her horn twice to let the car know she was there and needed to pass through. Silverman exited the car and walked to Coulter's truck. Coulter rolled down her window, and Silverman, whom Coulter did not know, began yelling at her to "get off [his] property," called her names, and threw a letter at her, hitting her in the face. Coulter said she was terrified; she called 911. Coulter felt unsafe and did not exit her truck until the police arrived. After this incident, "[she and her daughter] became nervous" and felt unsafe; Coulter feared

–23–

for her daughter and "it was just a really miserable home." Coulter continued to be scared after the alleged assault: "It was just a horrible feeling to wonder if I was going to come down the driveway again and have some man screaming at me and throwing things at me." Beyond the assaultive incident, evidence showed that Silverman and MQ demanded Coulter use the easement while simultaneously preventing her from doing so. Further, evidence showed that MQ and Silverman threatened to cut Coulter's electrical line.

Considered altogether, this evidence was factually and legally sufficient to support the trial court's verdict. Crucially, Silverman's conduct towards Coulter affected her in the sanctuary of her home.[2] Given this context, we conclude appellants have failed to show that no evidence supported the trial court's conclusion that Silverman's conduct was "extreme and outrageous."

Appellants also argue that the evidence was factually and legally insufficient to support the $5,000 in mental anguish damages awarded for Coulter's intentional infliction of emotional distress and assault claims. They argue Coulter's evidence does not reach the standard set out in *Durban v. Guajardo*, 79 S.W.3d 198 (Tex. App.—Dallas 2002, no pet.). In that case, this Court stated:

> Mental anguish is defined as intense pain of body or mind or a high degree of mental suffering. It is more than disappointment, resentment, or embarrassment. To recover for mental anguish, the plaintiff must prove such painful emotions as grief, severe disappointment,

---

[2] A "household [is] a sanctuary—'a place of residence for the family, where the independence and security of a home may be enjoyed,' free from 'harassment and disturbance.'" *Valenzuela v. Aquino*, 853 S.W.2d 512, 524 (Tex. 1993) (Spector, J., dissenting)

–24–

> indignation, wounded pride, shame, despair, or public humiliation. A mental anguish damages award requires evidence of a high degree of mental pain and distress that is "more than mere worry, anxiety, vexation, embarrassment, or anger."

*Id*. at 208 (internal citations omitted). We uphold a damages award for mental anguish against a legal sufficiency challenge when the claimant introduced direct evidence of the nature, duration, and severity of her mental anguish that created a substantial disruption in her daily routine. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). However, this sort of evidence is not required in all cases. *Id*. An award of mental anguish damages may also be supported by some evidence of, as stated above, a high degree of mental pain and distress that goes beyond "mere worry, anxiety, vexation, embarrassment, or anger." *Id*. In such cases we apply traditional "no evidence" standards. *Id*.

We conclude Coulter's evidence—described above—supports the trial court's award of damages on both the intentional infliction of emotional distress and the assault claims. Coulter also testified that she feared for herself and her daughter, she was terrified, she stayed away from her home as much as possible, she had trouble sleeping and had to take pills to do so, and she suffered chest pains, crying spells, and incurred $500 in medical bills. This evidence describes not mere anxiety but instead a "high degree of mental pain and distress." Appellant's sixth and seventh issues are overruled.

## F. Injunction amendment

Finally, in their eighth and ninth issues, appellants argue the trial court erred by refusing to amend the permanent injunction to allow MQ to install a gate across the easement at the property line with Coulter and to allow MQ to regrade the easement on its property. MQ filed a motion for reconsideration and modification of the final judgment in which it, among other things, asked the trial court to reconsider its decision to allow Coulter to maintain the easement at a lower grade near her house and to allow MQ to install a gate on the easement. The trial court did not rule on MQ's motion, so it was overruled by operation of law after 75 days. *See* TEX. R. CIV. P. 329b(c). "In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court." TEX. R. APP. P. 33.1(b).

We review the denial of a motion to modify a judgment for an abuse of discretion, which we will find if the trial court acted in an arbitrary or unreasonable manner, or if it acted without reference to any guiding rules or principles. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 804 (Tex. App.—Dallas 2011, no pet.); *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020) (trial court's refusal of a permanent injunction is reviewed for abuse of discretion); *Hot Rod Hill Motor Park v. Triolo*, 293 S.W.3d 788, 790 (Tex. App.—Waco 2009, pet. denied)

("We review a trial court's ruling on a motion to modify or vacate a permanent injunction for abuse of discretion.").

In its motion, MQ noted it sought to install a fence along the perimeter of the easement, and a gate at its opening, "to prevent acts of trespass on either property and to protect MQ's property located within the fenced area." MQ conceded the easement language was silent on whether a gate was permitted, but argued the court should conduct a balancing test, as described in *Greenwood v. Lee*, 420 S.W.3d 106, 119 (Tex. App.—Amarillo 2012, pet. denied), to determine whether to allow a gate. MQ argued it needed a gate because it was developing its land for "commercial purposes." But MQ pointed to no trial evidence—and no new evidence— demonstrating that the only reasonable decision for the trial court was to modify the injunction to explicitly allow MQ to erect a gate on the easement. Because appellants fail to demonstrate the trial court acted arbitrarily or unreasonably, we conclude the trial court did not abuse its discretion by allowing MQ's motion to be overruled by operation of law.

We conclude appellants' other contention here, that the trial court abused its discretion by not modifying the injunction to allow MQ to regrade the easement, was not preserved for appellate review. In its motion to modify the judgment, MQ asked the trial court to "reconsider its decision to allow Coulter to maintain the easement at the lower grade near her house." Now on appeal, appellants ask that MQ be permitted to regrade the easement. Because this complaint was not made to the trial

–27–

court, it is not preserved for our review.  *See* TEX. R. APP. P. 33.1(a).  Appellants'

eighth and ninth issues are overruled.

## III.   Conclusion

We reverse the trial court's award of $6,700 actual damages for Coulter's

breach of easement claim, and we render judgment that Coulter recover damages of

$4,700 on that claim.  In all other respects, we affirm the trial court's judgment.


200800f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MQ PROSPER NORTH, LLC AND
DONALD SILVERMAN, Appellants

No. 05-20-00800-CV     V.

LISA COULTER, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-03077-
2018.
Opinion delivered by Justice
Molberg. Justices Myers and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding $6,700 actual damages for Coulter's breach of easement claim, and we **RENDER** judgment that Coulter recover damages of $4,700 on that claim. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 12th day of December 2022.